No. 20932.

ALFONSO JUAN ALIRE *v.*
THE PEOPLE OF THE STATE OF COLORADO.
(402 P.2d 610)

Decided April 26, 1965. Rehearing denied June 21, 1965.

Walter F. Scherer, for plaintiff in error.

Duke W. Dunbar, Attorney General, Frank E. Hickey, Deputy, John P. Moore, Assistant, for defendant in error.

*In Department.*

Opinion by Mr. Justice Moore.

Plaintiff in error, to whom we will refer as the defendant, was found guilty of having unlawful possession of a narcotic drug, to-wit, heroin, contrary to the provisions of 48-6-2, C.R.S. 1953 as amended (which is now codified 48-5-2, C.R.S. 1963).

Prior to the time of trial, counsel for the defendant filed a motion to suppress evidence, in which it was asserted that the heroin involved in the case came into the possession of police officers as the result of an illegal search and seizure. This motion was denied. The only point urged as ground for reversal is that the trial court erred in denying the motion to suppress the evidence.

The attorney general and counsel for the defendant agree that the following is a fair statement of the evidence which bears upon the question to be determined: On September 7, 1962, the defendant was stopped by two Denver detectives for investigation of an alleged traffic violation. After the defendant stopped his car, Officer Norden drove back over the route driven by defendant in an attempt to find any contraband that might have been thrown from the car. Unable to find anything, he returned to the car where Officer Kennedy and defendant were standing. Norden put a flashlight beam into defendant's car and observed what appeared to be a No. 5 gelatin capsule containing white powder, on the front

seat near the middle of the car. He brought this to the defendant's and Officer Kennedy's attention before he opened the door. Defendant thereupon responded, "That isn't my junk — I haven't had any." Officer Norden then opened the door and retrieved the capsule. The witness identified People's Exhibit A as the capsule referred to.

Officer Kennedy testified to following defendant's car and, when it stopped, ordering him to get out of it. He observed at the time, "I should put him in jail for reckless and careless driving." After Officer Norden retrieved the capsule from the car, the defendant was taken to jail and thereafter was served with a citation for careless driving. Officer Hoaglund, assigned to the crime laboratory, identified People's Exhibit A as a capsule containing heroin.

The defendant, testifying in his own behalf, admitted a prior federal conviction of the crime of perjury. He further testified in substance as follows: That on September 6, 1963, with one Walker in his car, he was followed by a car driven by police officers; that his passenger got out; that defendant stopped his car and the two police officers asked him if he had had with him a man identified as Eliot Walker; and that the officers then said they were going to give him a ticket for speeding. After that the officers told him to get out of the car, informing him that "We are going to shake you down." Officer Norden then said "There's the cap, right on the seat," and he thereupon reached in and got it. The spot on the seat was where Walker had been sitting. Defendant however denied having known the capsule was there, or having seen it before. He denied ever having any narcotics in his possession on the day in question or at any prior time. On cross-examination he admitted having used narcotics but denied having used them before September 7, 1962. In rebuttal, Officer Linville testified that the defendant admitted using heroin on September 6, 1962, and that defendant's arms showed injection marks. The defendant then called Eliot Walker as a witness, but he refused to

testify claiming constitutional immunity from self-incrimination.

In addition to the foregoing, there is evidence that the two police officers began their surveillance of the defendant prior to the commission by him of any offense of careless or reckless driving. The officers were assigned to the Intelligence Narcotics Bureau of the Denver Police Department. They were acquainted with the defendant prior to the date of his arrest.

It is clear that the capsule which formed the basis of defendant's conviction was discovered by Detective Norden when he glanced through the window of defendant's car. Detective Kennedy testified that seeing the capsule was "pretty lucky at the time." Although the capsule was not chemically identified by the officers at the time it was seized, Detective Norden suspected that it contained heroin.

In his argument, counsel for defendant makes an assumption of a basic premise which is neither justified in law nor in fact. In order to establish his position that the seizure of the capsule from his automobile was unreasonable, defendant makes the assumption that there was also an unreasonable search. If we assume, arguendo, that the defendant was stopped by the police officers because of his careless driving, this fact would not prevent them from seizing contraband found lying exposed on the seat of an automobile.

 It has repeatedly been held that police officers are not required to close their eyes to evidence lying in plain view; it is not considered a search to observe that which is open and patent. *Smith v. U.S.*, 2 F.2d 715; *U.S. v. McDaniel*, 154 F. Supp. 1, aff'd. 255 F.2d 896; *Ferrell v. Commonwealth*, 204 Ky. 548, 264 S.W. 1078; *State v. Hawkins*, 362 Mo. 152, 240 S.W.2d 688; *State v. Miller*, 121 Wash. 153, 209 P. 9. Throughout these cases we find enunciated the pellucid principle that the discovery of the fruits of a crime or of contraband, lying free in the open, does not constitute any kind of search. It is also

quite clear that the seizure of such fruits or contraband is not unreasonable. Therefore, since the constitutional prohibition is against unreasonable searches and seizures, when the seizure is not unreasonable no guaranteed rights have been violated. *Ker v. Calif.,* 374 U.S. 23, 41, 10 L.Ed.2d 726, 742, 83 S. Ct. 1623.

█ The situation presented in this case is aptly expressed in *Ellison v. U.S.* 206 F.2d 476:

"If an officer sees the fruits of crime — or what he has good reason to believe to be the fruits of crime — lying freely exposed on a suspect's property, he is not required to look the other way or disregard the evidence his senses bring him. Law enforcement is difficult enough without requiring a police officer to free his mind of clues lying flatly before him."

█ It is not necessary for the seizing officer to have a chemical analysis of a suspected narcotic prior to making a valid seizure. It is only necessary that he have reason to believe that the article seized is a narcotic. From the experience that both officers had in the course of their employment and in this contact with defendant, it was reasonable for them to assume that the questioned capsule contained a narcotic. *Hernandez v. People,* 153 Colo. 316, 385 P.2d 996, is readily distinguishable from the instant case upon the facts.

The judgment is affirmed.

MR. JUSTICE SUTTON and MR. JUSTICE McWILLIAMS concur.