No. 21502.

GILBERT EVERETT GARCIA *v.* THE PEOPLE
OF THE STATE OF COLORADO.
(416 P.2d 373)

Decided July 5, 1966.

CLARKE W. KARR, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, FRANK E. HICKEY,

Deputy, AUREL M. KELLY, Special Assistant, for defendant in error.

*En Banc.*

MR. CHIEF JUSTICE SUTTON delivered the opinion of the court.

ON February 7, 1964, Gilbert Everett Garcia was tried and convicted of possession of narcotics, specifically cannabis sativa L., more commonly known as marijuana, in violation of C.R.S. '53, 48-6-2. He was thereafter sentenced to the Colorado State Penitentiary for a period of not less than three nor more than nine years.

Before trial, defense counsel moved to suppress certain evidence which consisted of a matchbook which had a marijuana cigarette therein and marijuana scrapings taken from Garcia's pockets at the police station. The court delayed the hearing of this motion until after the People's case, and ordered the trial to proceed. Thereafter, after the prosecution had rested, defense counsel renewed his motion, which was denied. After the conviction, the matter was raised for a third time in Garcia's unsuccessful combined motion for a new trial and judgment notwithstanding the verdict. The defendant now seeks relief by way of writ of error urging that the sole question involved is whether the arrest was lawful. We, however, believe that the pertinent question presented is whether the actions by the apprehending policemen were violative of the constitutional safeguards concerning search and seizure, under the Fourth Amendment to the United States Constitution and Article II, Section 7 of the Colorado Constitution, thereby barring the admission into evidence of the marijuana involved?

Three persons testified about the events which occurred during the evening in question: Denver Police officers Harold R. Sanderson and William Lee Brannan

for the prosecution, and Garcia on his own behalf for the defense. Officer Sanderson testified that at approximately 10:50 p.m. of the evening of November 7, 1963, while cruising with Officer Brannan in their squad car, he observed the defendant and another person drinking wine from a bottle on Lawrence Street just off 17th Street in Denver. Brannan stopped his vehicle. Sanderson then testified as to what happened as follows:

"A. As we saw the parties, they evidently saw us. The defendant — I don't know whether he said anything to the other party or not — but he turned around so his back was toward us, and walked diagonally across Lawrence Street to the other side of Lawrence, and proceeded up the sidewalk.

"I immediately got out and told him to come back, that we wanted to talk to him. And he hesitated and I told him again and told him to come back. And he turned around and came back, walking toward me. As he was doing so he stepped off the curb. And about three feet off the curb, when he had taken a second step toward me, why I heard a noise as a matchbook drop. And this makes a distinctive noise.

\* \* \*

"\* \* \* He dropped it with his right hand slightly behind him. And I saw the object strike the ground.

\* \* \*

"\* \* \* I thought this very unusual and kept my eye on the object the defendant had dropped, and walked towards him and told him at the same time to go over to where my partner was talking to the other party. I walked over to the object he had dropped and picked it up and opened the matchbook up.

\* \* \*

"\* \* \* Inside I found in the back of the folder, behind the matches, I found a half of an unsmoked cigarette. A home — hand-rolled style — with slightly tannish paper."

On cross-examination, defense counsel questioned the

officer on his reason for originally calling the defendant back:

"A. To — the original purpose was to check the party out and to ascertain his reason for drinking on the street.

"Q. Do you usually arrest people for disorderly conduct, or something, when drinking on the street?

"A. This depends if I have had contact with the party previously and warned him about the same. The first time it isn't standard policy, the first time we see a man drinking on the street, to arrest him. Sometimes a warning suffices."

Officer Brannan substantially corroborated Sanderson's testimony. Garcia, on the other hand, gave testimony which substantially conflicted with that given by the patrolmen. In such a case, of course, we do not reverse on a conflict in the evidence.

The People argue that no arrest occurred before the defendant was seen to have dropped the matchbook, and only upon finding contraband did the officer arrest on probable cause. Defendant asserts, however, that Sanderson's actions before the matchbook was dropped constituted an arrest, and because he claims there were no grounds for a lawful arrest at that time, the articles thereafter seized were inadmissible.

C.R.S. '53, 75-2-3, then in effect, provided in part:
"* * * It shall be unlawful for any person:

\*    \*    \*

"(14) To consume malt, vinous or spirituous liquor *in any public place, except* on premises permitted hereunder to sell such liquor by the drink for consumption thereon; * * *." (Emphasis supplied.)

Thereafter, C.R.S. '53, 75-2-28, states that:
"* * * Any person violating any of the provisions of this article, * * * shall be deemed guilty of a misdemeanor * * *."

Finally, C.R.S. '53, 75-2-29, directs:
"* * * It shall be the duty of all sheriffs, constables and police officers to enforce the provisions of this ar-

ticle * * *, and to arrest and complain against any person violating any of the provisions of this article or the rules and regulations pertaining thereto."

In view of the above quoted statutes and the testimony of Officer Sanderson, the defendant's ground for reversal here is based upon a false premise. This is so because assuming, without deciding, that Officer Sanderson's actions prior to the picking up of the matchbook did constitute an arrest, such an arrest was not illegal, as contended, because Garcia's drinking on a public street constituted a violation of the statute cited above and he was subject to immediate arrest therefor.

As we view it, the many recent cases on "probable cause" for arrest are not pertinent to the facts here where a violation of the law occurred in the sight of the officers. Prior to the drinking, no search had taken place. What occurred after the lawful stopping of the defendant was a seizure of the contraband dropped by Garcia. Under these circumstances, the officer's actions were clearly proper and justified. Of course, the search at the police station was even more strongly warranted. We have only recently held that in a proper situation, the police need not ignore that which comes into plain view. *Alire v. People*, 157 Colo. 103, 402 P.2d 610, 612 (1965). Here where the stopping and initial detention of the defendant was lawful, that rule had full effect when the officer picked up the evidence in the street.

The judgment is affirmed.

MR. JUSTICE MOORE not participating.