No. 23002.

CHARLES ROBERT MORA *v.* THE PEOPLE OF THE
STATE OF COLORADO.

(481 P.2d 729)

Decided February 22, 1971.     Rehearing denied March 22, 1971.

EDWARD H. SHERMAN, Public Defender, EARL S. WYLDER, Assistant, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, JOHN P. MOORE, Deputy, PAUL D. RUBNER, Assistant, EUGENE C. CAVALIERE, Assistant, for defendant in error.

*En Banc.*

MR. CHIEF JUSTICE PRINGLE delivered the opinion of the Court.

THIS writ of error is brought by Charles Robert Mora, hereinafter referred to as the defendant, from his con-

viction and sentence for possession of marijuana. On April 9, 1966, Denver Police Department detectives Mullins and Mulnix saw defendant come out of a pharmacy. Mulnix knew defendant on sight. Mulnix informed Mullins, who was driving, of defendant's presence. When defendant saw the officers, he changed his direction, thrust his hand into his pocket, and began walking down the street in an easterly direction. Mullins began backing the car down the street so that they could observe him. Mulnix saw defendant remove his hand from his pocket and discard a small box onto the sidewalk. Mulnix got out of the car and examined the contents of the box. On realizing the contents were likely marijuana, defendant was placed under arrest. The following advisement form was then read to the defendant:

"1. You are advised that you are not required to make any statement concerning any alleged offense, but if you make a statement, it may be used against you in Court.

"2. You have a right to talk to or with a·lawyer before making any statement."

Defendant was then asked if he had an attorney to which he replied in the affirmative. He thereupon named the lawyer who in fact represented him in this action.

Defendant was then given a copy of the form which he read and signed. Defendant then made a statement to the officers to the effect that the marijuana was not his, but rather that he had taken it that morning from his girl friend while she was sleeping. This statement was admitted into evidence over objection.

Three allegations of error are raised, namely: (1) That Mulnix' testimony that he knew defendant carried the meaning that defendant had a prior criminal record, (2) that the advisement form used on April 9, 1966, failed to comply with the mandate of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (hereinafter cited as *Miranda*), in that: (a) defendant was not warned he had the right to have his attorney present

during questioning, (b) that if he could not afford an attorney, one would be appointed for him, and (c) that the state did not meet its heavy burden of demonstrating a knowing and intelligent waiver, and (3) that several jurors saw a copy of defendant's record through the inadvertence of a district attorney, requiring a mistrial. We find no error, and affirm.

I.

Defendant argues that allowing Mulnix to testify that he knew defendant prior to the date of the confrontation carried the same prejudicial impact as testimony of prior criminal activity, and was therefore inadmissible, citing *Kostal v. People,* 144 Colo. 505, 357 P.2d 70, *cert.* denied, *Watson v. Colorado,* 365 U.S. 804, 81 S.Ct. 471, 5 L.Ed.2d 462. That case is not applicable here. In *Kostal,* the People presented evidence of other crimes in an attempt to show similar offenses so as to establish intent or design. This Court held that the offenses proved were wholly dissimilar and therefore had no relevancy in the case. In the instant case, the police officer testified merely that he knew Mora. This was relevant to the issue of whether the police officers were acting properly in their surveillance of him and in their picking up the box which he had discarded. The circumstances surrounding the arrest were completely relevant to the issues in the case. The fact that a police officer knows a person does not necessarily require the presumption that that person has a criminal record.

II.

Before delving into the issues raised concerning defendant's *Miranda* rights, it is necessary to examine the chronological setting of this case. The arrest took place on April 9, 1966, as did the reading of the advisement form and the taking of the incriminating statement. *Miranda* was decided June 13, 1966. On June 20, 1966, in *Johnson v. New Jersey,* 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882, the Supreme Court ruled that the man-

date of *Miranda* would be applied to all defendants whose trials began after June 13, 1966. *Cf. Jenkins v. Delaware*, 395 U.S. 213, 89 S.Ct. 1677, 23 L.Ed.2d 253. As this trial was held in December of 1966, *Miranda* is applicable despite the fact that the confrontation took place before the officers could have known what *Miranda* would say. We are thus faced with a legal problem peculiarly akin to this set of facts. Accordingly, the rules we announce today are so circumscribed. We will now discuss the three points raised by defendant challenging whether the warnings he was given (quoted *supra*, and seemingly based on *Escobedo v. Illinois*, 387 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977) satisfy the requirements of *Miranda*.

■■ A. Defendant argues that although he was warned he had the "right to talk to or with a lawyer before making a statement" he was not adequately warned that he had the right to have his lawyer present during the questioning. We keep in mind that the stated purpose of *Miranda* and related decisions was to accomplish a prophylaxis of certain police practices. At least in the instances where *Miranda* came too late to work this prophylaxis, we are of the opinion that the spirit of *Miranda* — and not a ritualistic formula — is the adjudicatory force with which we should be concerned. Words which convey the substance of the warning along with the required information are sufficient. *United States v. Lamia*, 429 F.2d 373; *United States v. Vanterpool*, 394 F.2d 697, 698-99. Here the defendant was advised he could talk to or with his lawyer before making any statement. We can see no way in which the added advice that he could have his lawyer with him at the time he made a statement could have more meaningfully protected his Fifth Amendment rights.

B. Defendant next argues that he was not told that if he could not afford an attorney, one would be appointed to represent him without cost prior to questioning. Thus, he says, the mandate of *Miranda* was not

adequately met. We disagree. Defendant refers us to footnote #43 from *Miranda* which reads:

"43 While a warning that the indigent may have counsel appointed need not be given to the person who is known to have an attorney or is known to have ample funds to secure one, the expedient of giving a warning is too simple and the rights involved too important to engage in *ex post facto* inquiries into financial ability when there is any doubt at all on that score."

■ Defendant argues that this footnote compels the result reached in *Griffith v. Jones,* 283 F.Supp. 794, wherein that court set down the rule that *no ex post facto* inquiries would be allowed where this warning was not given. We think that the plain English in footnote 43 provides that there is no need to advise the accused that he may have counsel appointed for him when such person is already known to have an attorney or is known to have ample funds to secure one. Here, the defendant was asked if he had an attorney to which he replied that he did, and he then proceeded to name the man who represented him in the case. To tell a person who has just informed you of his retained counsel's name that he had the right to a court appointed lawyer if he cannot afford one is so ritualistic and devoid of substance that it warrants no further discussion.

■ C. Defendant's final argument is that the state failed to meet its burden of showing a knowing and intelligent waiver. We disagree. Defendant signed the copy of the advisement form, and immediately gave what he thought to be an exculpatory statement. He had been told he had the right to talk to counsel before giving any statement. Despite this warning, he persisted in giving what he thought to be an exculpatory statement. Some days later, after having been given the same warnings, the defendant refused to make a statement until he talked to his lawyer. In our view, the finding by the trial court that the defendant waived his Fifth Amendment right not to make a statement is supported by

the. record. It may be that defendant waived his rights because he thought the statement he made would clear him; nonetheless the record supports the finding that he did waive his rights.

### III.

■■ During the course of the trial, defense counsel thought he noticed that several of the jurors could see defendant's record on the district attorney's table. He requested a hearing on the matter in chambers which was held. At the hearing, counsel for defendant stated his belief that two jurors saw the copy of defendant's criminal record which was on the table in front of the prosecutor. The prosecutor stated that under the physical conditions of the courtroom this was impossible. The jurors were not called for testimony. The trial court denied a motion for a mistrial. A motion for a mistrial goes to the sound discretion of a trial judge to be reversed only on a showing of an abuse of that discretion. Since in this case the trial judge was aware of the layout of the courtroom and what the jurors likely saw, we cannot say this refusal to grant the mistrial constituted an abuse of discretion.

The judgment is affirmed.