## No. 23791

### Robert D. Hafer, Donald J. Hafer, and Larry D. Hafer v. The People of the State of Colorado
(492 P.2d 847)

Decided January 10, 1972.          Rehearing denied January 31, 1972.

William S. Padley, Richard A. Dudden, for plaintiffs in error.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, Michael T. Haley, Assistant, for defendant in error.

*En Banc.*

WILLIAM M. ELA, District Judge\*, delivered the opinion of the Court.

On charges of grand theft and conspiracy to commit grand theft, the three Hafer brothers together were tried before a jury, found guilty and sentenced. Their writ of error questions denial of their motions for new trial or judgment of acquittal. The plaintiffs in error are referred to collectively as

defendants or by their first names — Robert, Donald, and Larry.

The defendants assert six grounds for error:

1. Admissibility of People's Exhibits N, O, P, and Q taken in a warrantless search of Robert's Cadillac.

2. Inadmissibility of Exhibit 11 as related to Donald's alibi.

3. Inadmissibility of Exhibit 15 as irrelevant.

4. Sufficiency of the evidence to allow the case to go to the jury.

5. Denial of a mistrial because of prejudice initiated by applause of the courtroom audience.

6. Failure to grant a new trial for improprieties in the District Attorney's closing arguments.

We find no grounds for error and therefore affirm.

The pertinent facts known to the officers up to the time of the defendants' arrests are as follows.

Two witnesses personally perceived and informed the officers of a non-business hours, 3:00 a.m. visit on September 25, 1967, by an unauthorized truck to the inside loading chute area of the Paoli Farmers Co-op Elevator Company's elevator in Phillips County, Colorado.

The eyewitness employee of the elevator company saw the truck proceeding away from the elevator down a lane without headlights until it reached the main highway No. 6. The truck turned on to the highway as its headlights came on, and it was joined by a second vehicle whose highlights came on at the same time. Both vehicles headed west on Highway No. 6. The witness also noted that the truck engine had an unusually loud noise. Within minutes, two witnesses followed the route of the two vehicles westerly on Highway No. 6. They saw no vehicles for about six miles till they came upon a truck faced west and parked on the road edge with a late model car having a light top parked directly in front of the truck. These witnesses continued west to the next town of Haxtun where they met with the Haxtun policeman to whom they related their story. Within minutes these three, joined by the alerted Paoli elevator manager, observed a west

bound late model Cadillac convertible with a light top pass through Haxtun on Highway No. 6. These four observers then returned to the parked truck from which location the car had departed. They noted that the gasoline-engined truck was loaded with wheat and carried one muffler in the cab.

An officer viewed the truck registration on the steering column as belonging to Robert Hafer. An officer viewed the loading area and driveway of the Paoli elevator and verified the unusual presence of large truck tire tracks there. About 5:00 a.m., the Haxtun policeman again observed the same Cadillac pass easterly through Haxtun on Highway No. 6. Radio contact was made and officers stopped the Robert Hafer Cadillac, carrying Robert, Larry, and Donald, some two miles east of where Robert's truck was still stopped. Robert made a threshold denial of knowledge of his truck being just two miles behind him, and asserted it should not be there since it was supposed to be parked in Denver.

After the defendants' arrests, additional facts were found which are pertinent.

Eventually on September 25, 1967, Sheriff Thietje of Phillips County placed all defendants in jail. Larry voluntarily asked the sheriff to lock and look after the unattended Cadillac. In his approach to the car to place it in storage, the sheriff found in plain sight a revolver (Exhibit Q) and two pairs of dusty coveralls (Exhibits N and O) which he seized. These coveralls had grain in their pockets, and from one pocket the sheriff took Exhibit P, a Conoco gas ticket. Wilbur Janss, an employee at the Sterling, Colorado, Conoco Station, identified Larry as a man who usually dressed in coveralls. Janss fueled Robert's truck with 52.8 gallons of gas about 1:00 a.m. on September 25, 1967. He gave Larry a dated credit slip (Exhibit P) for such purchase which was in Janss' handwriting. Janss' work shift began at 12 midnight. He identified the defendants in court from past servicing of their vehicles. He identified Robert's truck and Cadillac by picture. Janss also filled Robert's Cadillac with gas at approximately 4:00 a.m. on September 25, with Larry, Robert, and an unidentified third person present.

An inventory at the Paoli elevator after the arrests on September 25 showed that three bins above the truck loading chutes contained wheat, one of which was down 30 feet, or about 2,700 bushels of wheat worth approximately $1.35 a bushel. The shortage was unexplained by any authorized or recorded withdrawal. One witness estimated there were 500 bushels of wheat on Robert's truck. The sheriff found that Robert's truck and Cadillac both carried similar 2-way radio equipment. Defendants introduced substantial evidence concerning an alibi.

## I.

Defendants' first assertion of error, concerning the admissibility of Exhibits N, O, P and Q seized without a search warrant from Robert's Cadillac, depends upon the validity of defendants' arrests, as well as the materiality of the exhibits.

■ C.R.S. 1963, 39-2-20 controls the prerequisites for a valid arrest without a warrant. The circumstances of a trespasser being in the elevator with a large truck at 3:00 a.m. and its leaving the elevator with its headlights off; the meeting of the truck and another vehicle (Cadillac) with its headlights turned off at the highway; the proximity in space and time of the stalled truck of wheat; and the suspicious activities of those in the Cadillac which led to the officers stopping of the Cadillac for identification of the passengers — all of the foregoing circumstances combined to give the sheriff probable cause to arrest the defendants under the provisions of the statute and under the test set forth in *Gallegos v. People,* 157 Colo. 173, 401 P.2d 613 (1965).

■ Larry's voluntary request to the sheriff to lock and look after the unattended Cadillac led to the discovery of the pistol and coveralls (Exhibits N, O, and Q) which were in plain view. The approach to the car was not for the purpose of a search. Consequently, the discovery of the evidence was inadvertent. The exhibits were properly seized. *People v. Clark,* 173 Colo. 129, 476 P.2d 564 (1970); *People v. Teague,* 173 Colo. 120, 476 P.2d 751 (1970); *Alire v. People,* 157 Colo. 103, 402 P.2d 610 (1965). The pistol was a usual

instrument of crime. The dusty coveralls were significant as appropriate clothing worn in grain elevators.

The pistol (Exhibit Q) was admissible in evidence as a part of the history of the arrest. *See Davis v. People,* 137 Colo. 113, 321 P.2d 1103 (1958). The dusty coveralls (Exhibits N and O) were probative since they contained grain in their pockets. Exhibit N was especially important as containing Exhibit P in one of its pockets, since this Conoco ticket tied together Larry with the truck and the truck with the car for the specific short hours before the theft.

In his motion for new trial, defendant alleged error in the "admission" in evidence of a grain ticket from the Peconic, Colorado, elevator dated August 21, 1967, found in the pocket of the coveralls (Exhibit N). Its presence in the coveralls was unnoticed by counsel for either side at the time the coveralls were admitted into evidence. We can only speculate as to whether the jury was aware of it. If it was considered by the jury it would have been unfavorable to the People's case as it might have tended to explain the presence of the grain in the truck. We find nothing prejudicial to the defendants.

2.

The next asserted error was refusal to admit defendants' Exhibit 11. Donald's wife was allowed to testify that Donald returned from Phoenix, Arizona, to Denver at 5:00 p.m. on September 24 by Frontier Airlines; that she maintains his business records; and that Donald gave her his plane ticket (Exhibit 11) to keep as a business expense record. Donald's return to Denver at 5:00 p.m. on the 24th in no way prevented his presence in Paoli, Colorado, at approximately 3:00 a.m. on the 25th, ten hours later and approximately 180 miles away. Exhibit 11 was therefore immaterial and the court's ruling was not error.

3.

The next asserted error was refusal to admit Exhibit 15. The court ruled that a sufficient foundation for relevance had not been laid. Exhibit 15 was an undated grain ticket from the Peconic Grain Company found in Robert's truck. It

was offered in evidence to explain the grain in the truck. The court refused to admit the exhibit. *See Patton v. People,* 114 Colo. 534, 168 P.2d 226 (1946). Its relevancy was conjectural. Defense counsel's opening statement admitted the wheat was not defendants'. The exhibit did not support defendants' alibi and could only confuse the issue before the jury. We see no error.

### 4.

The fourth asserted error was that there was not sufficient evidence to go to the jury. The facts above related were all available to the jury and assuming their truth, as we must, we hold that they were sufficient to support the verdict on both counts.

### 5.

The fifth asserted error was denial of a mistrial because of applause from the courtroom audience at one point. The trial judge immediately ordered the audience to cease on threat of clearing the courtroom. He also immediately instructed the jury to disregard the demonstration. This was a singular outbreak. Mistrials need be granted only in extraordinary circumstances to prevent an injustice and are left largely to the discretion of the trial judge. *Lee v. People,* 170 Colo. 268, 460 P.2d 796 (1969); *Kelly v. People,* 121 Colo. 243, 215 P.2d 336 (1950). Under *Mora v. People,* 173 Colo. 552, 481 P.2d 729 (1971), the trial judge was in the best position to judge the effect the impropriety might have on the jury. *See also Turley v. People,* 73 Colo. 518, 216 P. 536 (1923). We find no abuse of discretion.

### 6.

We have considered the whole of the arguments and feel the District Attorney's remarks were a fair response to arguments of the defense. Provoked argument is permissible. *Grandbouche v. People,* 104 Colo. 175, 89 P.2d 577 (1939). The jury is presumed to follow the instruction given them that statements of counsel are not evidence. *Kelly v. People, supra; Honda v. People,* 111 Colo. 279, 141 P.2d 178 (1943).

Judgment affirmed.

WILLIAM S. EAKES, District Judge*, participating.

MR. JUSTICE DAY and MR. JUSTICE ERICKSON not participating.

---

* District Judge sitting under assignment by the Chief Justice under provisions of article VI, section 5(3) of the constitution of Colorado.