538 P.2d 484 (1975)
The PEOPLE of the State of Colorado, Plaintiff-Appellee,
v.
Bradford Eugene BOILEAU, Defendant-Appellant.
No. 74-279.
Colorado Court of Appeals, Div. II.
May 28, 1975.
Rehearing Denied June 17, 1975.
Certiorari Denied August 18, 1975.
*485 John P. Moore, Atty. Gen., John E. Bush, Deputy Atty. Gen., David A. Sorenson, *486 Asst. Atty. Gen., Denver, for plaintiff-appellee.
Rollie R. Rogers, State Public Defender, Thomas M. Van Cleave, III, Deputy State Public Defender, Denver, for defendant-appellant.
Selected for Official Publication.
ENOCH, Judge.
Bradford Eugene Boileau, defendant, appeals from a conviction of the crime of second degree burglary, § 18-4-203, C.R.S. 1973 (1971 Perm.Supp., C.R.S.1963, 40-4-203). Trial was to the court, defendant having waived his right to a jury trial. Defendant contends that the trial court should have suppressed certain evidence admitted at trial. The evidence in question consists of items seized from defendant's apartment at the time of his arrest, and the statement made by defendant after his arrest. We affirm.
On November 24, 1973, the door to the Outpost Bar in Adams County was forced open and certain items removed, including cash, a blender, bottles and cases of beer and whiskey. Information, from an undisclosed source, was conveyed to Officer Lewark of the City of Westminster Police Department which suggested to him that one Jerrieme Boileau and possibly his son, the defendant, were involved in this break-in. This unverified information also indicated that father and son were living in the same apartment house and that an active warrant existed for Jerrieme's arrest on another charge.
Five days after the break-in, Jerrieme was stopped on the street by Officer Lewark who obtained certain routine information and released him. Five minutes after this encounter, the police officer verified that there was in fact an active warrant for Jerrieme's arrest on an unrelated charge. Accompanied by Officer Juarez of the Denver Police Department, Officer Lewark went to Jerrieme's apartment in Denver where they arrested him.
As the officers and the arrestee were leaving the apartment, Jerrieme asked permission to tell a neighbor where he was being taken. With the permission of the officers, he knocked on the door of a nearby apartment and partially opened the door. While standing in the doorway with part of his body blocked from the officers' view by the position of the door and obscured by the darkness of the room, he spoke with the occupant. During this conversation the occupant remained behind the door out of sight of the officers.
After a few moments Officer Lewark pushed the door wide open. As his reason for taking this action, the officer testified: "For my safety. I didn't know if he was handing him a weapon orand he was in custody and we could not see past him, we could not tell what was going on inside the room except for the conversation." The officer testified that while standing in the open doorway he shined his flashlight around the darkened interior of the room and observed stacked whiskey cases, loose bottles, and a blender. Officer Lewark is the son of the owner of the Outpost Bar and had personal knowledge of the items taken in the break-in. He recognized certain items in the room as being the items taken from the bar or as similar to those taken. The room occupant, who was then for the first time identified as Jerrieme's son, the defendant, was arrested. On the following day defendant confessed to the burglary.
It is undisputed that the police officers did not have a warrant for the arrest of the defendant, nor a warrant to search the defendant's apartment. Officer Lewark admitted that the items in the apartment could not be seen until he pushed the door wide open. Further, the items in the apartment were not identifiable until the officer shined his flashlight into the room.
Defendant moved to suppress the items seized from his apartment and his statement to the police, alleging they were the fruits of an unreasonable search and seizure and an unlawful arrest made without a warrant, and that his rights under the United States and Colorado constitutions had been violated. At oral argument defendant *487 conceded that if the officers had a right to be in his apartment and had a right to use a flashlight, the officers had probable cause to justify the arrest of defendant.
Defendant contends, however, that the officers staged the situation to gain access to his room. Whether the officers did or did not stage the events leading up to defendant's arrest and the seizure, is a question of fact under the circumstances of this case. The record does not show any direct evidence to support defendant's contention. The argument is based on inferences which defendant has drawn from the evidence. The evidence and the reasonable inferences drawn therefrom must be viewed in the light most favorable to the fact finder's determination.
Having had the advantage of seeing and hearing the witnesses and being able to evaluate their credibility, the trial judge was in the best position to weigh the significance of the pertinent facts involved and determine whether, under the totality of all the facts and circumstances, the situation was staged as defendant alleges. See Capps v. People, 162 Colo. 323, 426 P.2d 189. The trial court's finding that the events had not been staged is supported by the evidence and that finding of fact is binding on review. See People v. Martinez, Colo., 527 P.2d 534.
At the suppression hearing, the trial court found that the initial intrusion by Officer Lewark, when he fully opened the door to defendant's apartment, was legitimate because the officer had been brought to the door at the request of Jerrieme and because the officer's action was necessary in order to maintain adequate surveillance of his arrestee. The court further found that once the door was open the items in the apartment were plainly visible to the officer standing in the entry. There is ample evidence in the record to support these findings. The fact that Officer Lewark used his flashlight to observe the items in the room does not in and of itself alter the application of the plain view doctrine, despite defendant's contention to the contrary. People v. Shriver, Colo., 528 P.2d 242.
While it may not be an unreasonable search for the police to observe evidence in plain view from a position where they have a right to be, this does not mean that the police may take the additional step of seizing that evidence without obtaining a search warrant where there are no exigent circumstances, Brown v. State, 15 Md.App. 584, 292 A.2d 762; People v. Curley, 12 Cal.App.3d 732, 90 Cal.Rptr. 783, unless there is probable cause to justify the arrest of the suspect who is present. If probable cause to arrest is present, the evidence can be seized as incident to a lawful arrest. People v. Baird, 172 Colo. 112, 470 P.2d 20.
The key issue is whether the officers had a right to be where they were when they observed the stolen goods in defendant's apartment. If they had a right to be in that position they would not be required to close their eyes to evidence lying in plain view; "it is not considered a search to observe that which is open and patent." Alire v. People, 157 Colo. 103, 402 P.2d 610.
The reasonable exercise of the broad duties of police officers clearly includes the inherent right to enter and investigate in emergencies without an intent to either search or arrest. See United States v. Barone, 330 F.2d 543 (2d Cir. 1964). Accordingly, the seizure of evidence has been upheld where the police discovered contraband after entering defendant's apartment to investigate a report of a burglary of the apartment, United States v. Estese, 479 F.2d 1273 (6th Cir. 1973), where police entered to investigate screams emanating from a rooming house and then saw counterfeit currency, United States v. Barone, supra, and where police entered a house in hot pursuit of a fleeing suspect and found evidence, Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L. Ed.2d 782. While the facts of this case *488 are not precisely the same as any of these emergency situations, we find the underlying principal to be applicable. We therefore hold that the officers had the right to take reasonable steps to keep their arrestee in full view and under appropriate custodial control, and that while so doing they had a right to respond as they did when they came upon stolen property in the possession of defendant.
The reasonableness of the officers' action in maintaining custodial control of their arrestee is a question of fact. As previously indicated, the evidence supports the trial court's conclusion that the officers' action was reasonable in this case. Having acted reasonably in the performance of their duties, the officers had a right to be in the doorway of defendant's apartment and to shine a flashlight into its darkened interior.
The next question is the validity of the arrest of defendant without a warrant and the subsequent seizure of the stolen goods. A police officer may make a warrantless arrest where he has probable cause to believe that the suspect has committed a crime and where the officer is confronted by exigent circumstances. People v. Moreno, 176 Colo. 488, 491 P.2d 575. Probable cause to make an arrest exists where the facts and circumstances within the knowledge of the arresting officer, or upon which he has reasonably trustworthy information, would warrant a man of reasonable caution to believe an offense has been committed or is being committed. People v. Williams, Colo., 525 P.2d 463; People v. Thompson, Colo., 523 P.2d 128; People v. Vaughns, Colo., 513 P.2d 196. The officers must have had probable cause to believe not only that an offense had been committed, but that the person to be arrested had committed it. People v. Thompson, supra ; People v. Olson, 175 Colo. 140, 485 P.2d 891. Whether or not the arresting officer reasonably believed a crime had been or was being committed, is to be considered in light of the officer's training and experience. People v. Vaughns, supra; People v. Nanes, 174 Colo. 294, 483 P.2d 958; Lucero v. People, 165 Colo. 315, 438 P.2d 693.
At the suppression hearing Officer Lewark testified that when he observed the evidence in defendant's apartment he saw items similar to those he personally knew to have been taken from the Outpost Bar, and that he noted numbers on the whiskey cases which corresponded to invoice numbers of the stolen cases that he had previously been given. He further testified that he advised Officer Juarez that he thought these were stolen goods, and that the defendant then pointed to his father, Jerrieme, and stated, "He didn't have anything to do with it." At the point Officer Juarez arrested the defendant.
On the basis of Officer Lewark's personal knowledge, which he conveyed to Officer Juarez, and the inculpatory statement allegedly made by the defendant, we conclude there was probable cause to arrest the defendant, if not for burglary, certainly for knowingly obtaining control over a stolen thing of value, § 18-4-404, C.R.S. 1973 (C.R.S.1963, 40-4-404). Immediate action was then justified to prevent defendant from escaping.
The fruits of the crime were all easily visible in the one-room apartment in which defendant was arrested and were properly seized incident to the arrest. It was proper to admit this evidence to prosecute defendant for the crime of burglary, even though it may have been seized incident to an arrest for a different crime. See Lucero v. People, supra.
Defendant's only objection to the introduction of his statement made after his arrest is based on his contention that the arrest was unlawful. Since we find the arrest was lawful, the trial court did not err in admitting defendant's statement.
Defendant also alleges as grounds for reversal that the evidence was insufficient to sustain the conviction. However, since the stolen goods and defendant's statement were properly admitted as evidence, *489 we conclude that there was sufficient evidence to support the conviction.
Judgment affirmed.
STERNBERG, J., concurs.
PIERCE, J., dissents.
PIERCE, (dissenting):
While the seizure of the items in question may have been proper under the "plain view" doctrine, People v. Shriver, Colo., 528 P.2d 242; Alire v. People, 157 Colo. 103, 402 P.2d 610, this question is purely academic until the preliminary question of legal entry is resolved in the affirmative. I am unable to discern any probable emergency or reasonable excuse for the initial entry. See Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134. I therefore consider the entry into defendant's apartment to have been illegal. Condon v. People, 176 Colo. 212, 489 P.2d 1297. Where the original entry was illegal, the evidence obtained as a result of that entry should have been suppressed. See People v. Godinas, 176 Colo. 391, 490 P.2d 945.