The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Dwayne BROOKS, Defendant–Appellant.

No. 95CA1699.

Colorado Court of Appeals, Div. II.

Aug. 7, 1997.

Rehearing Denied Sept. 11, 1997.

Certiorari Granted Feb. 2, 1998.

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S. (1996 Cum.Supp.).

650 ■

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Susan P. Furtney, Special Assistant Attorney General, Denver, for Plaintiff–Appellee.

Karen M. Ashby, Denver, for Defendant–Appellant.

Opinion by Judge BRIGGS.

Defendant, Dwayne Brooks, appeals the judgment of conviction entered on jury verdicts finding him guilty of second degree burglary, attempted theft, and possession of burglary tools. He contends he was denied the right to a fair trial because the trial court admitted evidence of bloodhound tracking and because the prosecutor made improper comments in closing argument. We affirm.

Police officers responded to a dispatch call of a burglary in progress at a private residence. When the burglar came out of the house and was confronted by the police, he fled on foot. Two officers gave chase, while one remained behind and called the "K–9 Unit." Within minutes, an officer arrived with a bloodhound.

The dog picked up a scent from footprints the burglar had left in fresh snow. After several minutes of tracking, the dog jumped against a fence. A man fitting the burglar's description jumped out from behind the fence and again fled.

The handler took the dog around that fence and several others as the tracking continued, until they stopped at a fence at the end of a cul-de-sac. Another officer drove the dog and its handler around the cul-de-sac to the back of the fence. The dog again began tracking, this time leading the handler to the backyard fence of a private residence, at which the officers following the burglar's footprints through the snow had just arrived.

The owners of the residence let the police and the dog into the backyard. There, the footprints ended and, this time, the dog did not track any scent leaving the yard. With the dog and its handler in front, they all entered an unlocked garage attached to the residence.

The officers did not immediately see anyone inside the garage, but the dog stuck his head underneath a car. One of the officers shined his flashlight under the car, revealing the feet of defendant. When defendant came out from under the car, the dog nudged him with his nose, indicating the track had been successfully completed. Defendant was arrested and taken into custody.

## I.

Defendant asserts the trial court abused its discretion in admitting evidence that a bloodhound tracking a scent helped lead police to him. The challenge is not to the general admissibility of evidence indicating the circumstances leading to a defendant's arrest, but rather to the presentation of evidence indicating the accuracy of a track in identifying a defendant as the person who committed the crime. We find no error in the admission of the challenged evidence.

## A.

Prior to trial, defendant filed a motion to suppress the dog-tracking evidence. He argued it was novel scientific evidence that should not be admitted because it did not satisfy the standard set forth in *Frye v. United States,* 293 F. 1013 (D.C.Cir.1923), and adopted in Colorado in *People v. Anderson,* 637 P.2d 354 (Colo.1981).

After an extensive hearing, at which the officer who trained and handled the dog testified, the court ruled the evidence was not "novel scientific evidence" and that its admission therefore was not governed by the *Frye* standard. However, it determined that the standard articulated in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) was applicable.

Although it recognized that the *Daubert* test was less restrictive than the *Frye* test, the court was concerned that no "scientific method" had been offered to explain how the dog in question, or any dog, was capable of tracking a particular scent. It therefore concluded the evidence did not meet even the *Daubert* standard and thus was not admissible under CRE 702. Because a different judge would be presiding at trial, the court declined to decide whether the evidence was nonetheless admissible as lay opinion evidence pursuant to CRE 701, leaving that issue for the other judge.

At a later pre-trial hearing, the judge who was to preside at trial concluded that, although he believed the evidence was admissible as expert testimony under CRE 702, he felt compelled to follow the first judge's ruling. However, the court ruled that the evidence, if not admissible under CRE 702, was admissible under CRE 701 because it was based on rational perceptions of the witness which were helpful to the jury's understanding of material facts in issue.

At trial, the handler testified he worked with a particular bloodhound named "Yogi." Before relating the events leading to defendant's arrest, the handler described the dog's

training, including "drop trailing," where a dog is able to leave a scent and pick it up again. He also recounted his own training in the specialized knowledge necessary to train particular breeds of dog to track and to understand the meaning of the dog's actions during a track, and he suggested a "theory" as to how a dog is able to track. Finally, he testified as to the dog's degree of reliability in terms of "verified finds" and as to the number of criminal suspects that Yogi had successfully located.

### B.

Defendant contends that the admissibility of the handler's testimony concerning the dog's tracking should have been determined under CRE 702, not CRE 701; that the *Frye* test was applicable; and that the testimony did not meet the *Frye* test, or even the *Daubert* test. We agree that, because the dog handler's testimony involved specialized knowledge, the admissibility of his testimony must be determined under CRE 702. We nevertheless conclude that neither the *Frye* nor the *Daubert* test applies and that the testimony was properly admitted into evidence.

■ Under the *Frye* test, novel scientific evidence is not admissible unless its proponent shows that (1) a theory supporting the proffered conclusion exists and is generally accepted in the scientific community; (2) techniques that are generally accepted in the scientific community exist and are capable of producing reliable results; and (3) the accepted scientific techniques were performed. *See Frye v. United States, supra; People v. Perryman,* 859 P.2d 263 (Colo.App.1993).

■ However, the United States Supreme Court has determined that the Federal Rules of Evidence have superseded the *Frye* test. Under the federal counterpart of CRE 702, the admissibility of scientific evidence, "novel" or otherwise, now rests on several considerations, including: (1) whether the theory or technique is or can be tested; (2) whether a theory or technique has been subjected to peer review and publication; (3) whether a technique has a known or potential rate of error; (4) whether a technique's operation is controlled by existing and maintained standards; and (5) whether the theory or technique is generally accepted in the scientific community. *Daubert v. Merrell Dow Pharmaceuticals, Inc., supra.* Our supreme court has not yet addressed whether the *Daubert* criteria apply to determine, under CRE 702, the admissibility of "scientific" evidence. *See Lindsey v. People,* 892 P.2d 281 (Colo.1995).

■ Defendant's argument that the evidence was inadmissible because it failed to meet either the *Frye* or the *Daubert* test rests on the unfounded assumption that, for dog-tracking evidence to be admissible under CRE 702, one of those two tests must be applied. The assumption ignores that both tests have been applied only to "scientific" evidence. Typically, this refers to testimony regarding "scientific devices and processes involving the manipulation of physical evidence including lie detectors, experimental systems of blood typing, voiceprints, identification of human bite marks, and microscopic analysis of gunshot residue." *People v. Hampton,* 746 P.2d 947, 950–51 (Colo.1987).

■ In contrast, if the proffered evidence does *not* depend upon any scientific device, method, or process, *neither* test applies. *See People v. Hampton, supra* (refusing to apply any additional test under CRE 702 to expert testimony concerning consistency of reactions of alleged rape victim to other rape victims); *People v. Perryman, supra* (refusing to apply any additional test under CRE 702 to expert testimony comparing characteristics of the defendant's shoes to prints found near the victim's body); *see also Campbell v. People,* 814 P.2d 1 (Colo.1991)(refusing to apply any additional test under CRE 702 to expert testimony regarding the reliability of eyewitness identification).

Testimony describing the use of a dog to track an individual by scent, and demonstrating the accuracy of the track, does not involve seemingly infallible scientific devices, processes, or theories. Likewise, it does not involve the manipulation of physical evidence with a scientific instrument or require obscure technical or scientific jargon. *See United States v. McNiece,* 558 F.Supp. 612

(E.D.N.Y.1983); *State v. Roscoe,* 145 Ariz. 212, 700 P.2d 1312 (1984).

Instead, such testimony concerns a subject of common knowledge: some dogs can track. While specialized knowledge is involved, the reliability of a particular track is typically demonstrated with evidence readily understood by a jury. This includes the handler's training, knowledge, and experience with the dog, upon which observations and interpretations of the dog's reactions are based, together with the dog's breed and training and the accuracy of its past tracks. As the Supreme Court of Arizona observed in rejecting a similar challenge to the admissibility of dog-tracking evidence:

> The evidence was offered on the basis that it is common knowledge that some dogs, when properly trained and handled, can discriminate between human odors. [The dog-handler's] testimony was premised upon this simple idea and not offered as a product of the application of some accepted scientific process, principle, technique, or device.

*State v. Roscoe, supra,* 700 P.2d at 1319–20; *see United States v. McNiece, supra* (when considering dog-tracking evidence, courts need not apply as strict a standard as when considering admissibility of "seemingly flawless evidence" based on scientific devices or processes).

Here, the handler's testimony established he was qualified both by training and experience to use the dog; the dog was adequately trained to track humans, including leaving and picking up a scent; the dog was reliable in tracking humans; the dog was placed on track at a place where the burglar had recently been; and the trail had not become so stale or contaminated that it was beyond the dog's ability to follow. We conclude, as have most other courts which have addressed the issue, that such evidence provided a sufficient foundation for the handler's further testimony concerning the dog's assistance in leading police to defendant, with the attendant inference that defendant had been accurately identified as the burglar. *See State v. Roscoe, supra; see also State v. Wilson,* 180 Conn. 481, 429 A.2d 931 (1980); *Starkes v. United States,* 427 A.2d 437 (D.C.App.1981).

Any remaining questions about the handler's qualifications or observations, or the dog's reliability or performance, either in the past or in this particular case, went to the weight of the evidence rather than its admissibility. *See Wilkie v. State,* 715 P.2d 1199 (Alaska.Ct.App.1986); *State v. Roscoe, supra.*

We recognize that the handler did suggest a "theory" as to "how" a dog tracks by scent. However, no separate objection was made to that specific testimony, at trial or on appeal, and it did not in itself suggest that dog tracking is inherently infallible.

■ Defendant further asserts that, even if the evidence was otherwise admissible, it should have been excluded under CRE 403 because it confused the issues and had the probable effect of misleading the jury. However, given the foundation that was established, as well as the corroborating evidence of defendant's guilt, the introduction of the dog-tracking evidence cannot be said to have violated CRE 403. *See State v. Wilson, supra.*

In summary, we hold that neither the *Frye* nor the *Daubert* test should have been applied to determine the admissibility of the handler's testimony and that a proper foundation was laid for its admission under CRE 702. We therefore find no reversible error in the trial court's admission of the evidence. *See Lindsey v. People, supra* (reversal not required when appellate court affirms admission of evidence on grounds different from grounds on which evidence admitted); *Fasing v. LaFond,* 944 P.2d 608 (Colo.App.1997).

## II.

Defendant's next contention is that improper comments by the prosecutor in closing argument violated his right to a fair trial. We again disagree.

■ It is improper in closing argument for a prosecutor to interject his or her personal belief as to the veracity of a witness' testimony. *People v. Herr,* 868 P.2d 1121 (Colo.App.1993). However, counsel is entitled to argue all reasonable inferences from the facts in evidence and may comment on how well and in what manner a witness

measures up to the tests of credibility set forth in the instructions. *See People v. Herr, supra.* Further, contentions of improper argument must be evaluated in the context of the evidence and the argument as a whole, including any "opening salvo" by defense counsel. *See Wilson v. People,* 743 P.2d 415 (Colo.1987); *People v. Marquantte,* 923 P.2d 180 (Colo.App.1995).

Here, it was defendant's theory of the case that he had not committed the crimes and that, in an attempt to conceal their use of excessive force in arresting the wrong person, the police had planted evidence of the burglary on defendant and identified him as the burglar. In closing argument, defense counsel made several statements attacking the officers' conduct and characterizing the officers' statements, both before and at trial, as "lies." In rebuttal, the prosecutor argued the evidence overwhelmingly suggested defendant's guilt and stated, "[Defendant] committed these crimes.... The bottom line is that [the officers] came in here and told you the truth."

Considered in light of defense counsel's summation, we conclude the prosecutor's rebuttal statements cannot fairly be said to have been improper. *See Hafer v. People,* 177 Colo. 52, 492 P.2d 847 (1972)(provoked argument is permissible); *People v. Vialpando,* 804 P.2d 219 (Colo.App.1990) (prosecutor is afforded wide latitude in replying to argument by opposing counsel). Moreover, even if we were to assume the statements were improper, they were not inflammatory and were but a brief part of an otherwise lengthy summation, and we find no basis for rejecting the usual presumption that the jury followed its instructions concerning the credibility of witnesses and evidence in the case. *See Hafer v. People,* 177 Colo. 52, 492 P.2d 847 (1972). We therefore further conclude the statements could not have affected the verdict.

Judgment affirmed.

PLANK and DAVIDSON, JJ., concur.