The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Bradford S. RAEHAL, Defendant–
Appellant.

No. 96CA1678.

Colorado Court of Appeals,
Div. IV.

April 16, 1998.

As Modified on Denial of Rehearing
June 11, 1998.

Certiorari Denied Feb. 16, 1999.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Lauren A. Edelstein, Assistant Attorney General, Denver, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, Claudia Brett Goldin, Deputy State Public Defender, Denver, for Defendant–Appellant.

Opinion by Judge RULAND.

Defendant, Bradford S. Raehal, appeals from the judgment of conviction entered upon a jury verdict finding him guilty of sexual assault on a child. We affirm.

Two brothers, aged 9 and 11 at the time, lived in an apartment complex with their mother. A mobile home park was located across the street where defendant had a trailer from November 16, 1994, to February 2, 1995.

At some time in November 1994, the boys met defendant and subsequently visited his trailer on several occasions. Five months later, the mother filed a police report alleging sexual assault by defendant on both boys during these visits.

Defendant was charged with two counts of sexual assault on a child and one count of sexual assault on a child—pattern of abuse. The latter count was based upon three alleged assaults on the younger victim. The jury found defendant guilty of only one assault and was unable to reach a verdict on the other charges.

I.

Defendant contends that various instances of prosecutorial misconduct violated his right to a fair trial by an impartial jury. In the alternative, he contends that the cumulative effect of the prejudice generated by these incidents mandates reversal of the judgment. We are not persuaded.

Defendant did not object at trial to any of the incidents that he now challenges. Accordingly, his claims must be reviewed under the plain error standard. Under that standard, reversal is not warranted unless the incidents affected the fundamental fairness of the trial so as to cast serious doubt on the reliability of the judgment. *See Walker v. People,* 932 P.2d 303 (Colo.1997).

A.

Defendant first contends that the trial court committed plain error when the prosecution was improperly allowed to use leading questions on direct examination of the younger victim. According to defendant,

these questions in effect allowed the prosecution impermissibly to testify to the time frame of the offense consistent with the allegations made in the prosecution's opening statement. We find no reversible error.

■ Leading questions are permitted on direct examination only as may be necessary to develop the witness' testimony. *See* CRE 611(c); *see also Berger v. People*, 122 Colo. 367, 224 P.2d 228 (1950) (allowing wider latitude in asking leading questions of children). However, the examiner should not format the questions so that one version of the disputed facts is assumed to be true. *McCormick on Evidence* § 7 (4th ed.1992).

Here, defendant's defense was that he was not living in the mobile home park at the time the brothers claimed to have been assaulted. The victim did not specifically testify as to the dates of the assaults. However, he was asked questions which incorporated a time frame:

Q: Do you recall back about *November of 1994*, about a year and a half ago?

A: Yeah.

Q: Okay. Do you remember living in a location around 1600 Paris Street? Does that sound familiar?

A: Yeah.

Shortly thereafter, the victim was asked:

Q: Did you meet someone over there at that trailer park *around November of 1994?*

A: Yes.

(emphasis by defendant)

Nevertheless, we find no plain error. There was substantial evidence that, during November 1994, the victim lived in defendant's neighborhood, met him, and had contact in the trailer on several occasions. These facts were established by the mother as to the family occupancy of the apartment, by a subsequent defense exhibit verifying the dates of defendant's residency in the mobile home park, and by a defense witness who observed defendant and the victim together. The victim testified that all of the misconduct occurred in defendant's trailer.

Conversely, defense counsel's cross-examination of the victim established the victim's uncertainty and confusion as to the time of the offense and thus whether the events occurred in November 1994. Specifically, the victim variously described the relevant time frame as when the weather was warm, when he and his brother were not in school, near the time of his birthday in February, and even in the summer.

Accordingly, given that the evidence from both parties established that defendant and the victim were in contact at defendant's trailer during November 1994, the real dispute became whether defendant did or did not commit the assault. Hence, we conclude that the use of dates in the leading questions and in opening statement did not undermine the fundamental fairness of the trial.

### B.

Defendant's next contention is that the prosecution improperly used leading questions to clarify testimony by the victim regarding another assault in order to establish that this individual did not commit the charged offense. Again, we find no plain error.

Where the testimony of a witness is confusing and unclear, it is permissible to ask leading questions designed to develop and clarify the witness' testimony. *See* CRE 611(c); *People v. Gillis*, 883 P.2d 554 (Colo. App.1994).

In this case, on direct examination the victim was asked:

Q: [Victim], during this time, when this happened with [defendant], did anybody else touch you in the way he did?

A: Yeah. [person's name given]

Q: He did the same things to you that [defendant] did to you?

A: Yeah.

Q: At the same time?

A: No. Before—when he moved, [defendant] moved.

Q: After [defendant] moved?

A: Yeah.

■ Considering the intimate nature of the acts alleged and the difficulty the young victim had in testifying, we conclude that the

use of leading questions to clarify the confusing testimony was warranted.

### C.

■ Defendant's final contention is that prosecutorial misconduct during rebuttal argument requires reversal. He argues that counsel's statements expressing personal belief in the victims' credibility undermined the jury's fact finding role. Again, we find no reversible error.

In rebuttal, the prosecution stated:

Ladies and gentlemen these boys aren't— aren't lying. They are telling you the truth. There is no motivation for it.

■ We recognize that it is improper in closing argument for the prosecutor to interject his or her personal belief as to the truthfulness of a witness' testimony. *See People v. Herr*, 868 P.2d 1121 (Colo.App. 1993). However, defendant's contention must be considered in the context of the entire argument and not in isolation. *See People v. Marquantte*, 923 P.2d 180 (Colo. App.1995).

Here, both the prosecution and defense properly focused on the credibility of the victim's testimony. The improper remark was not repeated. *See Hafer v. People*, 177 Colo. 52, 492 P.2d 847 (1972). Further, the jury was instructed that closing arguments were not to be considered as evidence. And, some of the jurors were obviously persuaded by defendant's contentions relative to the other charges. *See People v. Gutierrez*, 622 P.2d 547 (Colo.1981).

Under these circumstances, we conclude that the one remark did not fundamentally undermine the fairness of the trial. Nor do we view that remark when coupled with the other allegations of misconduct as sufficient to warrant a new trial.

### II.

■ Relying upon *Harper v. People*, 817 P.2d 77 (Colo.1991), defendant next contends that the trial court erred by refusing to poll the jurors to determine whether they overheard certain comments by the prosecutor made during a bench conference. In support, defendant argues that the remarks were prejudicial and that the court should have determined the potential for prejudice. We are not persuaded.

At the time of the assault, defendant was on probation for misdemeanor convictions out of California for lewd and lascivious acts on a child under 14 years of age. The trial court had denied the prosecution's request to admit the conviction as a similar crime.

Based upon certain testimony by a detective, the prosecutor requested a bench conference and stated:

Your Honor, we believe that the fact—the questions that—with regard to the child pornography trying to establish whether or not this defendant fits a profile of a child molester, and therefore that that would open the door, that we would be allowed to bring in the statements that the defendant made to this officer with regard to him ever doing anything like this, based on the California incident.

The court denied the request.

Later that day and after jury deliberations commenced, defendant made an offer of proof that the bench conference may have been audible to the jury. Because of the possibility of prejudice, defendant requested that the jury be polled or that the court declare a mistrial. The court denied the motion based upon its belief that the comments were not overheard. Specifically, the court noted that the prosecutor's back was to the jury at the time the comments were made. In the alternative, the court relied upon its prior instruction to the jury during voir dire to ignore any comments overheard in bench conferences.

In *Harper*, our supreme court announced a three-part test to evaluate the possibility of prejudice resulting from mid-trial media reports. Defendant argues that the same analysis should be applied here to assess the potential for prejudice resulting from possible exposure to the inadmissible information. The appellate decisions, however, have recognized a distinction between extraneous media reports and prejudicial comments made in the courtroom.

As to the latter, the trial court is in the best position to judge the effect of any improper influence on the jury. *See People v. Horton*, 683 P.2d 358 (Colo.App.1984) (trial court did not abuse its discretion in failing to poll jury or declare a mistrial when a member of victim's family called defendant a derogatory name during trial); *People v. McGuire*, 751 P.2d 1011 (Colo.App.1987) (not an abuse of discretion to deny a mistrial after complaining witness audibly stated "You're a liar" during defense counsel's closing statement).

Further, this court must give deference to the findings of the trial court, based on its observation of courtroom occurrences, rather than engage in abstract speculation to find prejudice. *See People v. Gladney*, 194 Colo. 68, 570 P.2d 231 (1977) (mere possibility of prejudice is not sufficient to warrant reversal).

Here, the extrinsic information was not a detailed account of defendant's prior convictions but rather a limited reference to "the California incident." Further, given the trial judge's familiarity with the courtroom, we decline to conclude that the court's findings as to the audibility of the prosecutor's comments lacked support. Accordingly, we affirm the court's ruling.

### III.

Finally, defendant contends that he did not make a knowing, intelligent, and voluntary waiver of his constitutional right to testify because the trial court misled and confused him unnecessarily during its *Curtis* advisement. Defendant argues that, as no advisement is required for misdemeanor convictions, the court's comments on this point discouraged him from testifying. We are not persuaded.

In *People v. Curtis*, 681 P.2d 504 (Colo. 1984), our supreme court held that a criminal defendant has a due process right to testify on his or her own behalf and that a certain advisement should be given. One purpose of the *Curtis* advisement is to eliminate speculation as to what a particular defendant might believe to be the "salient consequences" of testifying and to provide accurate information concerning those consequences. *See People v. Milton*, 864 P.2d 1097 (Colo.1993).

Here, the court's advisement satisfied all of the *Curtis* requirements. However, the court also advised defendant that his previous misdemeanor convictions for lewd and lascivious acts:

> cannot be disclosed to the jury, unless, through the direct examination, your attorney were to ask a question, which would open the door ... whereby the People could use that as impeachment testimony....

Defendant repeatedly confirmed that he understood the consequences of this decision and thereafter stated he did not want to testify.

In our view, the court's reference to the admissibility of defendant's misdemeanor convictions correctly stated the law. *See People v. Metcalf*, 926 P.2d 133 (Colo.App. 1996) (evidence of a prior arrest, criminal charge, or conviction may be admitted for impeachment purposes when the witness on direct examination has given specific contrary testimony). Hence, we find no error in the court's effort fully to advise defendant.

The judgment is affirmed.

VOGT, J., concurs.

NEY, J., dissents.

Judge NEY dissenting.

I agree with the majority that neither the asserted instances of prosecutorial misconduct nor the *Curtis* advisement require a reversal of the defendant's conviction. However, I disagree with the majority's conclusion that the mandate of *Harper v. People*, 817 P.2d 77 (Colo.1991) is limited to media reports and not applicable to prejudicial comments made in the courtroom during trial. I would not interpret *Harper* that narrowly. Accordingly, I dissent from the affirmance of the judgment of conviction.

I believe that *Harper v. People, supra*, is equally relevant to determining the possible prejudice resulting from a jury's exposure to inadmissible information in the courtroom as it is to exposure to media reports during a

trial. I would therefore consider it mandatory for the trial court to determine if the jury overheard the comment, and, if so, if that comment, consisting of a reference to a conviction of a similar offense which the trial court had previously ordered excluded, was prejudicial.

Accordingly, because the trial court did not conduct the three part test mandated by *Harper v. People, supra,* I would reverse defendant's conviction and remand for a new trial.