No. 22929.

RAYMOND SABINO MARTINEZ *v.* THE PEOPLE OF THE STATE OF COLORADO.
(451 P.2d 293)

Decided March 3, 1969.

CHARLES D. PIERCE, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, JOHN P. MOORE, Deputy, GEORGE E. DEROOS, Assistant, for defendant in error.

*In Department.*

Opinion by MR. CHIEF JUSTICE MCWILLIAMS.

THIS is a search and seizure case. One Martinez was convicted by a jury of the crime of unlawful possession of a narcotic drug, namely, cannabis sativa L, hereinafter referred to as marijuana, and as a result thereof he was sentenced to a term in the state penitentiary. By writ of error Martinez seeks reversal of the judgment and sentence thus entered. As indicated, the only ground for reversal urged in this Court is that Martinez' rights under the provisions of the federal and state constitutions relating to search and seizure are claimed to have been violated by two officers of the Pueblo police department. Let us examine the facts and circumstances surrounding Martinez' arrest.

Two Pueblo police officers in the early morning hours were cruising in their squad car in a southerly direction on Main Street when they espied a car being driven in an erratic manner. Specifically, the driver of the other vehicle made a "sweeping" right-hand turn in front of the squad car and then as it proceeded south on Main Street the driver "drifted" from one lane to another of the three lanes reserved for southbound traffic. Suspecting that the driver of the vehicle might be under the influence of intoxicating liquor and that a serious accident might ensue, the police determined to stop the car.

In stopping the other vehicle, the police first turned

on their red emergency light. Then the police turned their white spotlight directly on the rear vision mirror in the car ahead. It was said that the spotlight "bounced" off the rear view mirror and illuminated the interior of the car to the end that the police stated that they had an extremely clear view of activity within the vehicle. Both policemen testified that they noticed the person riding on the right-hand side of the front seat make certain "strange movements." This person partially turned around and, according to the police, he quite obviously appeared to be attempting to hide something.

The police succeeded in stopping the vehicle and the one police officer went up to the driver's side and directed the driver to get out of the vehicle. The second officer went to the right-hand side of the stopped vehicle and directed the passengers to get out of the car. Martinez was the passenger riding on the right-hand side of the front seat and he, and two others who were riding in the back seat, then got out of the vehicle. The police officers and the four then went back towards the police car where one officer began to question them.

The other police officer then went back up to the right-hand side of the vehicle and he testified that with the aid of his flashlight he then looked into the vehicle through the open window on the right-hand side of the vehicle. He stated that on the right-hand side of the front seat he saw a penny matchbox with a "rubber band about it lengthwise" and some wheat straw cigarette papers. Both were in plain view, though about one-fourth of the matchbox was shoved back in between the cushion and the back of the front seat. As was indicated earlier, Martinez was the individual who was riding on the right-hand side of the front seat of the vehicle.

This particular officer testified that he had been on the Pueblo police department for some seven years and during that time had made numerous arrests of persons possessing marijuana. He outlined how he had "worked with" the officers of the Federal Bureau of Narcotics,

Bureau of Customs and the narcotic bureau of the Denver Police Department. Drawing upon his considerable experience in this field, the officer stated that when he saw the penny matchbox with the rubber band around it lengthwise, with the wheat straw cigarette papers lying nearby, he at once concluded that the matchbox contained marijuana. The officer explained that a penny matchbox was one of the "main ways" of transporting marijuana for sale on the streets, and that the rubber band around the box in lengthwise fashion was designed to keep the "slidetype cover from sliding off and the contents being spilled." As concerns the wheat straw cigarette paper, the police officer testified that this particular type of paper is "most commonly used by people who smoke marijuana. . . . as it is a slower burning paper and the party using the marijuana derives more of an effect by using this type of paper rather than white or plain colored cigarette paper."

This particular officer testified that he then reached through the open window and picked up the matchbox and the wheat straw cigarette papers and walked back to where his fellow officer and the four were standing. The four were placed under arrest and the officers then opened the penny matchbox, which contained a substance which the officers at once believed to be marijuana. At the police station the debris from the pockets of the four was carefully preserved and later tested, and whereas the debris from the pockets of the other three did not show the presence of marijuana, the debris from Martinez' pockets showed the presence of marijuana.

Martinez upon questioning admitted that the marijuana was his and claimed that the others didn't even know about it, and this confession was admitted upon trial.

The foregoing is about the extent of the People's case against Martinez. Additionally, however, an expert did testify that the matchbox did contain marijuana, just as the officers had concluded.

As above indicated, the only error assigned in this

Court relates to the fact that the police officers admittedly did not have a search warrant when they took into their possession the matchbox and the wheat straw cigarette papers which were lying on the front seat, right-hand side, of the vehicle and it is claimed that under all of the facts and circumstances this was an unlawful search and seizure.

We have held that a search which is incidental to a valid arrest is not unlawful, even though it is conducted without the sanction of a search warrant. Also, we have stated that a valid or lawful arrest is one which is based on "probable cause," and that probable cause means that the arresting officer had "reasonable grounds." *Lavato v. People*, 159 Colo. 223, 411 P.2d 328 and *Gonzales v. People*, 156 Colo. 252, 398 P.2d 236.

In defining the terms "probable cause" and "reasonable grounds," we have heretofore declared in both *Lavato* and *Gonzales* as follows:

"Probable cause exists where the facts and circumstances within the officers' knowledge and of which they had reasonable, trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed. . . . [citing cases] . . . . In dealing with probable cause, one deals with probabilities. These are not technical; they are factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act."

Applying the standards laid down by us in *Lavato* and *Gonzales*, we conclude that the arresting officers in the instant case did have "reasonable grounds" and "probable cause" for arresting Martinez for the unlawful possession of marijuana, and that any search and seizure was therefore incidental to a lawful arrest. And whether a search which is incidental to a lawful arrest precedes or follows the formal arrest procedure is not significant. See *Lavato v. People, supra.*

Attention is also directed to *Alire v. People*, 157 Colo.

103, 402 P.2d 610 and the recent case of *Marquez v. People,* 168 Colo. 219, 450 P.2d 349. Our disposition of the present controversy is deemed to be well within the rationale of each.

The judgment is affirmed.

MR. JUSTICE GROVES and MR. JUSTICE LEE concur.