No. 25019.

No. 25050.

THE PEOPLE OF THE STATE OF COLORADO *v.* RICHARD RAY RAMEY, A/K/A RICHARD RAMEY AND ROBERT JOSEPH WIRTZ, A/K/A ROBERT WIRTZ.

(483 P.2d 374)

Decided April 12, 1971.

Carl Parlapiano, District Attorney, Gordon R. Cooper, Assistant, for plaintiff-appellee.

GERASH and KAISER, BELLINGER, FARICY, TURSI and O'CALLAGHAN, DALE P. TURSI, for defendants-appellants.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

THERE are involved here two interlocutory appeals of which we make disposition in one opinion. We refer to the first numbered matter as Case A and the second as Case B. In Case A the defendants stand indicted of burglary, theft and conspiracy to commit burglary. In Case B the same defendants are under indictment for the same felonies, but different premises and property are involved. The property alleged to be stolen in each case was obtained in the same search. In separate hearings before different judges of the district court of Pueblo County the defendants' motions to suppress were denied. We affirm these rulings.

The testimony at the two hearings concerning the arrest of the defendants and the search of an automobile used by them is the same in all material respects.

The residences of Donald Erskine and Neal Anderson in Pueblo have abutting backyards. At about 7:30 one evening, Mr. Erskine observed two men at the back door of the Anderson residence, one of whom was bent down over the doorknob. These men observed Mr. Erskine and one "hollered over" inquiring as to whether "these folks" were out of town. Mr. Erskine replied that he was not sure and one of the men responded, "I'll be darned, we were suppose to meet 'em here." The two men departed. These men wore dark top coats. Mr. Anderson estimated one to be 5'7" in height and the other to be about "a head taller."

The Andersons, who had been out of town, arrived home shortly after these events. Mr. Erskine immediately notified them of the occurrence, and in turn the Pueblo

police were advised of the incident and a description of the men given to them.

The rear yard of the Anderson premises is enclosed and by a fence. There was a gate in the fence at one of the rear corners of the house affording entry to the yard and back door. The earth near the gate was moist and soft. An investigative officer came to the Anderson residence shortly following the report to the police. He and Mr. Anderson found two sets of footprints entering and leaving the yard. In the heel portion of one was the clear imprint "Florsheim."

All the information available was broadcast on the police radio, as was information of an earlier burglary in which jewelry and a radio were taken. Shortly after 10:00 p.m. that evening the investigating officer and another officer noticed the defendants on foot about two blocks from the Anderson residence. The defendants met the description given by Mr. Erskine. The officers approached the defendants and asked to examine the bottoms of their shoes. It was apparent to the officers that the heel of one of the shoes had made the "Florsheim" footprint. The officers frisked the defendants, finding items that might be used in a burglary. They inquired of the defendants as to what they were doing, and were advised that the defendants' automobile, which was parked a short distance away, had broken down and that they were proceeding to a service station. The officers arrested the defendants.

One of the officers then flashed a light into the indicated car, seeing in plain view on the back seat two open paper sacks, containing, among other things, jewelry and a radio. When one of the officers opened the front door of the vehicle to remove the keys, he observed a sack of coins. The contents of the sacks are the alleged stolen property of one case and the coins, as well as a watch later found in the police car in which the defendants were taken to the police station, are the property allegedly the subject of theft of the other case. At

the hearings on the motions to suppress the evidence is undisputed that these articles had been taken in the two burglaries.

In Case A the district judge, in denying the motion to suppress, did not make sufficient findings. In Case B the findings upon denial of the motion to suppress were amply sufficient. The initial question which we determine is whether Case A should be remanded for the making of findings. Since the findings in Case B were by the same court, although by a different judge, since the rulings by both judges were the same, and since the parties and the search — and in substantial effect the testimony — are identical, we have concluded that we are justified in considering the findings in Case B as governing Case A. It would be useless to remand Case A for findings.

The defendants argue that the arrests were invalid and, being so, the searches of the persons and the automobile were likewise invalid. The thrust of the defendants' argument is toward the search of the automobile, rather than toward the search of persons. The defendants, however, raised the question of the validity of the search of the persons in their motions to suppress and, as they have argued that the arrest was invalid, we must rule as to the personal as well as the vehicular searches.

We approve of the court's finding that there was probable cause for the arrest predicated upon Mr. Erskine's exposition of the conduct of the men at the back door of the Anderson residence, his description of the men, and the "Florsheim" print and heel.

The search of the automobile does not come under the category of being incident to the arrest. To look into an automobile is not a violation of law. Under *People v. Teague,* 173 Colo. 120, 476 P.2d 751 (1970), an officer has the right to shine a flashlight into a car. The articles similar to those reported taken in a burglary were in plain view and, therefore, could be seized. *Peppers v. People,* 162 Colo. 586, 427 P.2d 870 (1967).

Once the officers had seen the suspect articles which were in plain view, they had the right thoroughly to search the car. *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).

██ If the defendants, or one of them, left the watch in the police car, it was abandoned. The finding of it was not a search. While there may or may not be a question of admissibility, the defendants do not have standing to raise a search question. *Martinez v. People*, 169 Colo. 366, 456 P.2d 275 (1969); and *Smith v. People*, 167 Colo. 19, 445 P.2d 67 (1968).

Ruling affirmed in each case.