## No. 26803

**The People of the State of Colorado v. Brown A. Mangum and Vincent P. Frey**

(539 P.2d 120)

Decided August 18, 1975.

Robert R. Gallagher, Jr., District Attorney, Jerry B. Tompkins, Deputy, for plaintiff-appellant.

Rollie R. Rogers, State Public Defender, James F. Dumas, Jr., Chief Deputy, T. Michael Dutton, Deputy, for defendant-appellee, Brown A. Mangum.

Roath & Brega, P.C., Charles F. Brega, for defendant-appellee, Vincent P. Frey.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

This is an interlocutory appeal initiated by the district attorney on behalf of the People, challenging the correctness of rulings by the trial court sustaining motions to suppress (1) physical evidence and (2) statements and admissions of defendant Frey. We reverse.

Defendants Mangum and Frey are jointly charged with second-degree burglary (section 18-4-203, C.R.S. 1973), theft (section 18-4-401, C.R.S. 1973) and two counts of conspiracy (section 18-2-201, C.R.S. 1973).

The motion to suppress, in brief, was based upon the lack of probable cause to arrest or to search and seize the physical evidence. Also, defendants contend that

"any statements solicited from said defendants were the fruit of an invalid arrest, were not voluntarily made and were not made after a full, proper, and timely advisement of the defendants' constitutional and procedural rights."

At the conclusion of the suppression hearing, the court took the matter under advisement and subsequently entered a minute order, suppressing the tangible physical evidence, because "the search and seizure were instituted without probable cause to establish any crime had been committed." In reference to the statements, the court held that "where no *Miranda* warnings had been given [they] are not voluntary." The court made no findings of fact beyond the broad general ones implicit in its ruling.

The evidence disclosed the following factual setting. On the day of the alleged offense, at about one o'clock a.m., Officers Rose and Conner of the Littleton Police Department were on routine patrol in a quiet residential area of Littleton. As they approached the intersection of Prince and Costilla Streets, they observed a blue Pontiac sedan with its parking lights on and the motor running double parked beside a motor home. At about the same time, Officer Conner observed a person on foot leaving the immediate area of the motor home. This aroused their suspicions so they decided "to see what was going on."

As they approached the parked car, its headlights were turned on and it started moving in the opposite direction from the police cruiser. The officers made a U-turn, caught up with and stopped the blue sedan three blocks from the motor home. The patrol car stopped directly behind the

Pontiac. Both officers got out of their car with Officer Rose going forward on the left side and Officer Conner on the right side of the blue sedan. The driver of the Pontiac exited his car and started toward the patrol car meeting Officer Rose near the rear fender of the Pontiac. Inspection by Officer Conner determined that the driver was the only person in the Pontiac.

The driver identified himself as Mangum. At the request of Officer Rose, he produced his driver's license but was unable to comply with the request for a certificate of vehicle ownership. He explained that the automobile belonged to a Mr. Frey.

When Officer Conner inspected the blue sedan to determine whether there were other occupants, with the aid of a flashlight he observed numerous items of electronic equipment lying on the back seat and on the floor of the Pontiac. The wires had been cut. This aroused his suspicion. He reported this discovery to Officer Rose.

At about this time a young man arrived at the scene and identified himself as Mr. Frey. He was recognized by Officer Conner as the person previously seen leaving the area of the motor home. Upon Frey's arrival, Mangum identified him as the owner of the Pontiac. Frey produced his driver's license and the auto registration certificate. At this point Officer Conner, over the police radio, requested an identification check on the two individuals. Within a few minutes he learned that there was an outstanding arrest warrant for Mangum who was thereupon arrested.

Officer Rose, shortly after Frey's arrival at the scene, asked him if he had any objection to the officers looking at the electronic gear in the back of his car. Frey consented. Officer Rose then asked to whom the gear belonged and Frey replied that he had removed it from Mangum's motor home; that the tape deck was his but that he had not had an opportunity to mount it in his vehicle. Rose, upon examining it, advised Frey that the serial number on one piece of equipment had been obliterated. Frey responded, "We didn't do that. It must have been done by the man we just stole the stuff from."

At about this point, Officer Keenan of the Littleton Police Department, in response to a call from Officer Rose, arrived on the scene for the purpose of removing Frey to the jail. Keenan happened to be an acquaintance of Frey's, having bought a motor home from a firm for whom Frey worked as a mechanic. Frey actually worked on the motor home which Keenan had purchased. Keenan added that he and Frey had seen each other a dozen times in the two-year interval since the purchase of the motor home.

When Keenan saw his "friend" at the scene, he asked him what was his problem. Frey responded, according to Keenan, "He said he got caught after entering a motor home illegally and taking some stuff out of it."

Keenan then put Frey in his patrol car and told him not to talk. Frey started talking again and the officer told him that he should be advised of his rights. Frey stated he knew what his rights were, but he didn't care, that he wanted to tell Keenan that he broke into the motor home, that he

had used a master key to get into it and that "he had taken a bunch of parts out of that motor home."

Upon arrival at police headquarters, Frey was formally advised of his rights, then signed the advisement form. He thereafter made written confessions of his own guilt and implicated Mangum.

## I.

The first issue raised by the court's ruling is whether the initial stop of the blue sedan was illegal because of the lack of "probable cause to establish that any crime had been committed." The defendants in their brief contend that there was no probable cause or "reasonable suspicion that any crime or traffic violation had been committed."

■ The recited facts were more than sufficient to justify the suspicions of the two police officers that a crime had been committed or that some type of illegal activity was in progress. They were justified in making a "stop" to ascertain what the defendants were "up to." The facts are equally as provocative of police action as those in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), which sanctioned "stop and frisk."

■ As pointed out in *Terry*, the governmental interest in effective crime prevention and detection underlies the recognition that a police officer may in appropriate circumstances and in an appropriate manner approach a person for investigating possible criminal behavior, even though there is no probable cause to make an arrest. The situation which unfolded before the two police officers suggested the necessity for investigation and determination of the import of what they saw. The procedures followed by the officers in the instant case were reasonable, under the circumstances, and consistent with good police practice. The *Terry* doctrine has been extended in this jurisdiction to automobile stops. *People v. Lucero,* 182 Colo. 39, 511 P.2d 468 (1973). We, therefore, conclude that the initial stop of the defendants' car by the police was proper, and, hence, does not taint the evidence thereafter seized.

■ We also hold that the *Stone area* tests for an investigatory stop were met. *Stone v. People,* 174 Colo. 504, 485 P.2d 495 (1971). In *Stone,* we held:

"In order lawfully to detain an individual for questioning, (1) the officer must have a reasonable suspicion that the individual has committed, or is about to commit, a crime; (2) the purpose of the detention must be reasonable; and (3) the character of the detention must be reasonable when considered in light of the purpose."

## II.

■ The defendants contend that the shining of the flashlight into the rear seat of the Pontiac by Officer Conner was an unlawful search lacking probable cause or reasonable suspicion. We have spoken directly to this point on several occasions. Further elaboration here would serve no purpose. *People v. Haggart*, 188 Colo. 164, 533 P.2d 488 (1975); *People v. Shriver*, 186 Colo. 405, 528 P.2d 242 (1974); *People v. Ramey*, 174

Colo. 250, 483 P.2d 374 (1971); *People v. Teague*, 173 Colo. 120, 476 P.2d 751 (1970).

### III.

While the defendants do not dispute the fact that the items were in plain view, they challenge the seizure of the electronic equipment and tools, contending that the seizure cannot be justified, because the items seized were not illegal *per se*. Also, it is contended that the seizure was unlawful, because the consent given by defendant Frey was not shown to be voluntary.

■ The argument that the items, which were the subject of the seizure, must be illegal *per se* in order to validate a "plain view" seizure has no merit. *Martinez v. People*, 162 Colo. 195, 425 P.2d 299 (1967). We, therefore, do not reach the question of voluntary consent to the search.

■ As the investigation proceeded, Officer Rose discovered that the serial number on one piece of equipment had been obliterated. This is evidence that a crime may have been committed. Section 18-5-305, C.R.S. 1973. At this point there was probable cause to arrest and seize the property incident to the arrest.

■ It has been recognized by this court that the rights accorded under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) have no application to Fourth Amendment searches and seizures. *Phillips v. People*, 170 Colo. 520, 462 P.2d 594 (1969).

### IV.

The issues raised as to the admissibility in evidence of the statements or admissions of the defendant Frey which were made before he was advised of his Fifth Amendment rights as delineated in *Miranda* pose a more serious problem. The trial court held that the statements were involuntary as a matter of law where no *Miranda* warnings were given prior to the statements. Inferentially, it held that subsequent statements, although preceded by *Miranda* warnings, were tainted and, therefore, inadmissible. It is our opinion that the trial court has misapplied the law.

■ The trial court suppressed the defendant Frey's statement to the effect that the person from whom he had stolen the equipment must have obliterated the serial number. At the time that this statement was made, Frey was not in custody. He had just made the statement that all of the electronic gear, except the tape deck, belonged to defendant Mangum, and that it had been removed from his motor home. It was *a statement* of Officer Rose which induced the incriminating statement, *not a question*. He merely advised Frey that a serial number on one piece of equipment had been obliterated. At this point, as observed above, Frey was not in custody, the investigation was still in its preliminary stages, and there was no coercion on the part of the police officers. *People v. Stevens*, 183 Colo. 399, 517 P.2d 1336 (1974); *People v. Gurule*, 175 Colo. 512, 488 P.2d 889 (1971). Under these circumstances, it cannot be said that the defendant's Fifth Amendment rights were violated. *People v. Garrison*, 176 Colo. 516, 491 P.2d 971 (1971); *People v. Potter*, 176 Colo. 510, 491 P.2d 974 (1971).

■ The other statements made by the defendant Frey prior to being given the *Miranda* warnings were those made to Officer Keenan after he had been arrested. The first statement, to the effect that he had broken into a motor home and taken some "stuff," was in response to what might be termed "a greeting" from a surprised friend or acquaintance. Officer Keenan had come to the scene for the sole purpose of escorting a suspect to the city jail — not to interrogate him. The "greeting" did not call for the unexpected response which it produced — a virtual admission of guilt. It was a completely volunteered statement on the part of the defendant.

After Officer Keenan and the defendant got in the officer's patrol car the defendant wanted to explain what had happened. The officer told him not to talk. When Frey persisted and the officer said he would have to advise him of his rights, Frey said he knew what his rights were, but that he did not care, he wanted to tell Keenan what had happened.

■ The Fifth Amendment provides that no person "shall be compelled" to be a witness against himself. The facts here show that not only was there no compulsion, but that the defendant anxiously desired to tell his friend the truth of what had occurred. Volunteered statements are not proscribed by constitutional mandate. *Maes v. People*, 160 Colo. 528, 418 P.2d 891 (1966); *Ballay v. People*, 160 Colo. 309, 419 P.2d 446 (1966).

■ Lastly, defendant Frey contends that the written statements which he made at police headquarters "were not voluntary and were the product of a defective *Miranda* warning." We have examined the advisement form which was read to the defendant. It complies with the requirements of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) in all respects. The testimony of Officer Conner, who witnessed Officer Rose read the seven numbered advisements to the defendant Frey, stated that after each advisement was read, Frey placed his initials in the left hand margin adjacent to the respective numerals. At the bottom of the form appear two certificates. Each is signed by the defendant Frey. The first is, "that the rights were read to me by an officer and I was given an opportunity to read the same myself." The second certified,

". . . I am fully aware of the rights set forth above and that I freely and voluntarily waive the same and consent to make a statement and/or answer questions without the presence of a lawyer."

The testimony of the officers is uncontradicted. The cross-examination by counsel for the defendant Frey did not raise any issue as to coercion. It appears that the defendant Frey wanted to cooperate with the officers and make a clean breast of his participation in the criminal episode. The *Miranda* warnings being in complete compliance with the United States Supreme Court's mandate and the statements having been voluntarily made, the defendant's argument is without substance.

The ruling of the trial court suppressing the evidence is reversed and the cause remanded for further proceedings.

MR. JUSTICE GROVES and MR. JUSTICE ERICKSON do not participate.