## No. 26416

## The People of the State of Colorado v. Tony Dallas McPherson

(550 P.2d 311)

Decided June 1, 1976.

82

John P. Moore, Attorney General, John E. Bush, Deputy, Janet Lee Miller, Assistant, for plaintiff-appellee.

Rollie R. Rogers, State Public Defender, James F. Dumas, Jr., Chief Deputy, Lee Belstock, Deputy, for defendant-appellant.

*In Department.*

Opinion by MR. JUSTICE LEE.

Tony Dallas McPherson (defendant) appeals from his conviction of possession of marijuana. C.R.S. 1963, 48-5-2.[1] We reverse the conviction.

On the night of January 26, 1973, three Pueblo police officers in an unmarked patrol car put a house under surveillance in response to repeated telephone calls from an anonymous informant that its occupants might be involved in narcotics trafficking. A warrant had been obtained to search the house, but it had not yet been executed. Approximately half an hour after the surveillance had commenced, defendant emerged from the house carrying a brown paper sack. Defendant got into his vehicle, which was parked in front of the house, and drove off. Their interest being aroused, the officers followed defendant for about eight blocks. They then turned on their red light and pulled defendant over to see who he was and what he was doing.

As defendant was pulling over, the officers noticed that he made a movement with his arm as if to put something under the driver's seat.

After stopping, Officer Jordan walked over to defendant's car on the left side and asked for his driver's license. As Jordan approached, defendant got out of the car to meet the officer, and, though the evidence

---

[1]Now section 12-22-302, C.R.S. 1973.

is conflicting on this point, defendant apparently left the car door open as he produced his license.

After checking the license, Jordan shined his flashlight into the interior of the car. He testified that he was able to observe the brown paper sack underneath the left front seat. He was also able, he said, to detect a small hole in the sack out of which a plastic baggie was protruding some two inches. At this point, defendant was advised of his rights. Jordan pulled the sack out from under the seat, opened it, and found a number of small plastic bags containing a green substance which appeared to be, and was later demonstrated to be, marijuana. Defendant was then formally placed under arrest. No pat-down search of defendant was conducted.

The evidence was undisputed as to the following facts: that defendant was not known to the police officers and had no record of past criminal conduct; that defendant was followed solely because he had been in the particular house which was under surveillance; that the officers did not know if any criminal activity was actually going on inside the house; that while driving away from the house defendant had committed no traffic violations of any sort; and that the reason for stopping him was to find out who he was and what he was doing, to see if something could be found that might have come from the house under surveillance.

Officer Jordan testified on cross-examination as follows:

"Q Now, you said that you observed a party carrying a sack as they left that house; is that right?

"A That is correct.

"Q Were they carrying that sack under their arm or in their hand; how were they carrying it?

"A Like a person would carry a lunch sack, just in their hand walking.

"Q And then the car made a U-turn and left that area where the house was?

"A That is correct.

"Q And at the time that that car left, you had no reason for stopping the car at that time; is that correct?

"A Not at that time; no, sir.

"Q No offense had been committed?

"A No, sir.

"Q You had no reason to suspect that the person driving that car was involved in any unlawful activity?

"A No, sir.

"Q And likewise, when you started following that car, you had no reason to believe that the person was involved in any unlawful activity; is that correct?

"A That is correct, sir."

Defendant filed his motion to suppress, which was denied. Defendant contends that upon the foregoing facts there was no probable cause for his

apprehension and arrest, and that the resultant search and seizure were illegal. The People respond that the *Stone*-area test was satisfied, *see Stone v. People*, 174 Colo. 504, 485 P.2d 495, and that the paper sack was in plain view, once defendant got out of his car leaving the door open.

■ We agree with defendant that he was improperly stopped and that the motion to suppress should have been granted.

I.

The People contend that the stopping of defendant and the demand for his driver's license were permitted by what is now section 42-2-113, C.R.S. 1973, which requires that licenses be displayed to peace officers upon demand. Also cited are *People v. Andrews*, 173 Colo. 510, 484 P.2d 1207, and *Martinez v. People*, 169 Colo. 366, 456 P.2d 275. None of this authority supports the People's position.

■ We do not believe that the legislature intended the statute to confer upon a police officer unlimited discretionary authority to stop any car at any time for any reason as long as he asked contemporaneously for display of a driver's license. A construction of the statute which would give to police officers such carte blanche authority would be inconsistent with section 16-3-103, C.R.S. 1973, which specifically limits an officer's authority to stop persons for investigation, in the absence of probable cause to arrest. The clear intent of section 42-2-113 is simply to permit the officer to demand the license of the driver whose vehicle has been stopped for an otherwise proper purpose. This view is consistent with the foregoing decisions.

We said in *Martinez, supra*, that

"* * * In our view, the suspicious movements of the [defendant's] vehicle and the nature of the locality [a high-crime area] justified the police in stopping the vehicle to make an identification inquiry. In this regard, see [section 42-2-113] which requires an operator of a motor vehicle to display his operator's license upon demand by a police officer."

The *Andrews* case dealt with the constitutionality of a police roadblock where all vehicles were stopped in order to check safety equipment, brakes, license plates, and drivers' licenses. We held that such an inconvenience was not unreasonable in light of the police power to protect the welfare of the general public. We specifically noted that this type of roadblock was not merely a ruse or a guise to conduct searches of cars.

In the present case, none of the suspicious circumstances, such as found in *Martinez*, are revealed in the record. Nor, unlike in *Andrews*, was there any suggestion that defendant was the subject of a generalized safety stop. Quite the contrary, it is clear that he was singled out for stopping because he had been in the house under surveillance.

The demand for defendant to present his license was proper only if the officers properly stopped him in the first place.

## II.

■ The People do not contend that there was initially probable cause to arrest defendant. *See Gallegos v. People*, 157 Colo. 173, 401 P.2d 613. They do contend, however, that it was reasonable to suspect that defendant had committed or was about to commit a drug-related offense, justifying a temporary detention under *Stone v. People*, 174 Colo. 504, 485 P.2d 495. The underlying premise of this decision, that a well-founded suspicion justifies an officer's brief detention for a limited inquiry, *Stone v. Patterson*, 468 F.2d 558 (10th Cir. 1972), was enacted into statutory form in section 16-3-103, C.R.S. 1973, which provides that

"* * * [a] peace officer may stop any person who he reasonably suspects is committing, has committed, or is about to commit a crime and may require him to give his name, address, and an explanation of his actions. * * *"

Given such flexible standards as these, each case must be carefully examined on its own facts. *See People v. Nelson*, 172 Colo. 456, 474 P.2d 158; *People v. Gurule*, 172 Colo. 159, 471 P.2d 413.

■ Our study of the record reveals no circumstances which under a reading of any of our previous decisions in this area of the law could legitimate the stopping of defendant's vehicle as a temporary detention within the contemplation of *Stone* or of section 16-3-103. The officers had never seen or heard of defendant before, did not even know if drug trafficking actually had taken place in the house under surveillance, and had no reason to believe the sack defendant carried contained drugs. Nor did defendant violate any traffic laws as he drove away.

None of the suspicious circumstances were present here, which, alone or in conjunction with one another in previous cases, have justified a *Stone*-area stop. No known drug dealers, for example, had been observed entering or leaving the house under surveillance (*People v. Montoya*, 185 Colo. 299, 524 P.2d 76); no drugs had actually been seen in the house (*Montoya, supra*); the tip that prompted the investigation was anonymous rather than from a citizen who identified himself (*People v. Mathis*, 190 Colo. 534, 542 P.2d 1296, *see also People v. Glaubman*, 175 Colo. 41, 485 P.2d 711); there were no outward and visible signs that a crime might be in progress (*People v. Mangum*, 189 Colo. 246, 539 P.2d 120); defendant was not a possible suspect in any prior crimes to the knowledge of the arresting officers) (*People v. Gurule*, 175 Colo. 512, 488 P.2d 889); and the area in which this incident occurred was not, insofar as revealed by the record, a high-crime area (*People v. Taylor*, 190 Colo. 144, 544 P.2d 392).

Nor can defendant's making of a furtive gesture, his reaching below his seat prior to coming to a stop, be deemed sufficient to justify a determination that reasonable suspicion existed. As we stated in *People v. Goessl*, 186 Colo. 208, 526 P.2d 664,

"* * * [A] mere furtive gesture is subject to such varied interpretations, that it would be folly to allow great weight to be afforded such actions without more specific knowledge on the part of the officer.* * *"

We note that in any event defendant's furtive gesture was not made until *after* the officers had signalled him with their red light to pull over. The gesture could thus not have been a ground for suspicion justifying the stop.

### III.

█ In view of our holding that the officers had no authority to stop defendant under these circumstances, the fact that the brown paper sack may have been in "plain view" is not decisive. As the United States Supreme Court said in *Harris v. United States*, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067,

"* * * It has long been settled that objects falling in the plain view of an officer *who has a right to be in the position to have that view* are subject to seizure and may be introduced in evidence.* * *" (Emphasis added.)

*See also United States v. Turbyfill*, 525 F.2d 57 (8th Cir. 1975); *People v. Montoya, supra.*

In view of our disposition, we find it unnecessary to consider or discuss defendant's other contentions of reversible error.

The judgment of conviction is reversed and the cause is remanded to the district court for proceedings consonant with the views herein expressed.

MR. JUSTICE KELLEY, MR. JUSTICE GROVES and MR. JUSTICE ERICKSON concur.