## No. 27890

**The People of the State of Colorado v. Jimmy Lee Waits**

(580 P.2d 391)

Decided June 26, 1978.

Dale Tooley, District Attorney, Brooke Wunnicke, Chief Appellate Deputy, for plaintiff-appellant.

Lozow & Lozow, Jon P. Lozow, for defendant-appellee.

*En Banc.*

MR. JUSTICE CARRIGAN delivered the opinion of the Court.

The People brought this interlocutory appeal after the trial court suppressed certain stolen property and a pair of pliers discovered on the floor of the appellee's automobile and beneath its seat. We reverse the suppression ruling and remand for further proceedings.

At approximately 7:45 p.m. on February 11, 1977, Officers Mueller and Quinlan of the Denver Police Department were seated in their marked patrol car preparing reports and observing traffic. Their police cruiser, equipped with overhead red lights, was parked on an East Denver street, partially in the roadway and partially on the shoulder.

Looking into the rearview mirror, Officer Mueller noticed an automobile approaching the police car at a distance of seventy-five to one hundred yards. As the automobile neared the patrol car, it stopped suddenly, backed up at high speed, quickly turned around and drove rapidly away from the police cruiser.

The police officers turned their car around, pursued the automobile, pulled up behind it, and turned on their overhead red lights. As the driver pulled to the curb, the officers saw him lean down to his right as if reaching under the right front seat.

Both officers testified that they had not observed any traffic law violation. Rather, they stated that they had followed and stopped the vehicle because the driver's abrupt, apparently evasive action upon confronting their police car had aroused their suspicions. In addition, Officer Mueller testified, based on his experience patrolling that area of Denver for one and one-half years, that the vicinity had a higher-than-average crime rate. During the time period preceding this arrest, he stated, numerous burglaries had been committed in the early evening hours. Officer Mueller stated that his experience combined with his knowledge of the neighborhood and suspicions aroused by the appellee's conduct led him to stop the appellee's car in order to determine the driver's identity and ask him to explain his actions.

After the appellee stopped and got out of his automobile, Officer Mueller met him at the rear of his car. Mueller requested and examined

his driver's license. Then, without asking any further question, the officer stepped forward and shined his flashlight into the window of the appellee's car. On the right front floor, he saw the handle of a large pair of "vise grip" pliers protruding from under the front seat, and three pillowcases bulging with objects of varying sizes and shapes. Officer Mueller testified that he recognized the pliers as a type commonly used by burglars to twist lock bolts out of their sockets. He admitted, however, that the pliers were of a common type and that he owned a similar pair himself. He further testified that it was a familiar practice of burglars to stuff the fruits of their crimes into pillowcases for easy transport.

Officer Mueller next opened the car door and reached in to retrieve and inspect the pliers. Upon doing so, he noticed a jewelry box protruding from one of the pillowcases. His examination of the pliers revealed that their teeth were covered with gold-colored metallic shavings which he recognized from experience as particles of the type that would be left on such a tool after it had been used to force a lock. At that point, Officer Mueller arrested the appellee for investigation of burglary. Some time later a detective who had been called to the scene removed the pillowcases from the car and discovered items later identified as having been taken in a house burglary earlier that evening.

The trial court held that the appellee's suspicious actions justified the officers in making an investigatory stop, but that there was no justification for Officer Mueller's flashlight "search" of the vehicle or the subsequent seizure of the pliers and stolen goods. Accordingly, the trial court suppressed the use in evidence of all the items found in the appellee's car.

On appeal, the People contend (1) that the officers were justified in making the initial stop for investigatory purposes, (2) that it was lawful for Officer Mueller to look through the windows into the appellee's automobile, and (3) that the pliers and stolen items were lawfully seized pursuant to the "plain view" rule.

We address the issues in the order stated.

### I. *The Investigatory Stop*

The first issue presented is whether the initial stop of the appellee's automobile was lawful. The appellee argues that his actions were insufficient to justify the officers in pursuing and stopping his vehicle. We do not agree.

The standards for determining the legality of an investigatory stop were established in *Stone v. People,* 174 Colo. 504, 485 P.2d 495 (1971):

"In order lawfully to detain an individual for questioning, (1) the officer must have a reasonable suspicion that the individual has committed, or is about to commit, a crime; (2) the purpose of the detention must be reasonable, and (3) the character of the detention must be reasonable when considered in light of the purpose." 174 Colo. at 509; 485 P.2d at 497.

We have previously applied these standards to investigatory stops involving automobiles. *People v. Mangum,* 189 Colo. 246, 539 P.2d 120 (1975).

■ Although the police officers in this case did not directly observe the commission of a crime, or even a traffic violation, the appellee's abrupt, evasive maneuver upon confronting their marked police cruiser was clearly sufficient to raise a "reasonable suspicion" of criminal activity. Without dwelling on the obvious, it is sufficient to observe here that the clear inference to be drawn from the appellee's sudden change of course was that he wished to avoid any police contact. Similarly, the obvious implication of that desire was that the appellee had recently been involved in illegal activity, and feared recognition or that his crime would be detected.

Based on these reasonable inferences and the officers' experience in law enforcement, we cannot say that their actions in stopping the appellee's vehicle, for limited investigatory procedures, was unreasonable.[1] To the contrary, in this situation, failure to investigate further might have been considered inconsistent with good police practice.

## II. *The "Flashlight Search"*

The next question concerns the lawfulness of Officer Mueller's "flashlight search" of the vehicle. Appellee contends that the only purposes for the stop were to identify the driver and question him about his evasive actions, and that Officer Mueller could have obtained that information without looking into the car. Therefore, he argues, anything discovered as a result of the "flashlight search" was properly suppressed. Again, we disagree.

■ Since Officer Mueller had reasonable grounds to justify an investigative stop of the automobile, it was not unlawful for him to be standing next to the car's window or to look at whatever could be observed through the window from where he had a right to be. Since he was entitled to look through the windows, he was entitled to use a flashlight to be able to see in the dark. *People v. Mangum, supra; People v. Haggart,* 188 Colo. 164, 533 P.2d 488 (1975); *People v. Shriver,* 186 Colo. 405, 528 P.2d 242 (1974); *People v. Ramey,* 174 Colo. 250, 483 P.2d 374 (1971); *People v. Teague,* 173 Colo. 120, 476 P.2d 751 (1970).

*People v. Apodaca, supra,* upon which the appellee relies for his contention, involved a special fact situation and is inapplicable here. In that case, police conducted an exploratory flashlight search of the

---

[1] This holding is not inconsistent with *People v. Apodaca,* 194 Colo. 324, 571 P.2d 1109 (1977) and *People v. McPherson,* 191 Colo. 81, 550 P.2d 311 (1976). In *Apodaca,* no specific facts related by the police officers gave any indication that the defendants were trying to elude them or were otherwise acting suspiciously. In *McPherson,* the defendant's automobile was stopped solely because the defendant had emerged from a house which happened to be under surveillance — there was absolutely no reason to suspect that the defendant had been involved in criminal activity.

defendants' car even though they had no reason to suspect that a crime had been committed. Moreover, the car was parked in a carport behind the defendants' house. Given those facts, we held that the police search violated the defendants' reasonable expectation of privacy.

Here, on the other hand, the police had reasonable grounds to suspect criminal activity, and thus were justified in making the initial stop of the appellee's car. Furthermore, the car was stopped on a public street where, given the ready visibility of an automobile's interior, the appellee's reasonable expectations of privacy were considerably diminished. At that point the situation was comparable to the right of an officer to see what is in plain view in a car parked on a public street. Under the specific circumstances here, Officer Mueller was justified in making the very limited intrusion on the appellee's privacy incident to looking through the car window with a flashlight.

### III. *The "Plain View" Seizure*

Finally, the People contend that since Officer Mueller could lawfully look into the appellee's automobile, he was entitled to seize the pliers and pillowcases visible to him. We agree.

The "plain view" doctrine is limited by the nature of the items seen in plain view. This court has previously recognized that an item need not be "illegal *per se"* in order to validate a plain view seizure. *People v. Mangum,* 189 Colo. 246, 539 P.2d 120 (1975). Rather an officer need only have "good reason to believe" that the article to be seized is incriminating evidence. *Alire v. People,* 157 Colo. 103, 402 P.2d 610 (1965). This reasonable belief may be based either on the article's intrinsic nature or on the officer's knowledge and experience as they relate to the facts presented in the particular case. *E.g., State v. Cook,* 115 Ariz. 188, 564 P.2d 877 (1977).

We hold that in this case the suspicious circumstances surrounding the investigatory stop, combined with Officer Mueller's knowledge and experience regarding the items visible in the car were sufficient to justify seizure of those items pursuant to the plain view rule.

The appellee's evasive actions raised a reasonable suspicion of *some* criminal activity, and Officer Mueller was aware that several burglaries recently had occurred in that vicinity at that time of day. Upon signaling the appellee to stop his car, Officer Mueller observed the appellee's apparently furtive attempt to hide something under the front seat. When, in addition to these observations, he saw the large pair of pliers and the bulging pillowcases which his police experience told him were probably the instrument and fruits of a burglary, he had the requisite "good reason to believe" that the items were incriminating evidence. *See Alire v. People, supra. Cf. Martinez v. People,* 168 Colo. 314, 451 P.2d 293 (1969). At that point, he was entitled to seize and inspect the pliers as he did. Finally, his observation of the metallic shavings on the pliers and the presence of

the jewelry box in the pillowcase were sufficient, when combined with his other observations and rational inferences, to constitute probable cause to arrest the appellee for investigation of burglary.

In summary, we conclude that the police actions at each step of this investigation were based on reasonable inferences drawn from the facts presented analyzed in the light of the officers' knowledge and experience. The minimal intrusions on the appellee's privacy were amply justified by the circumstances. In short, the officers' actions constituted alert and thorough police work and did not violate the appellee's constitutional protection against unreasonable searches and seizures.

Accordingly, the trial court's suppression ruling is reversed, and the cause is remanded for further proceedings consistent with this opinion.

MR. JUSTICE LEE and MR. JUSTICE ERICKSON dissent.

MR. JUSTICE HODGES does not participate.

MR. JUSTICE ERICKSON dissenting:

I respectfully dissent. Assuming *arguendo* that the police officers were justified in making the investigatory stop in this case, an issue which is very much in doubt, I cannot accept the majority opinion's conclusion that the officers acted properly in seizing the items on a plain view theory.

The plain view doctrine, as an exception to the warrant requirement, must necessarily be limited by the nature of the items observed in plain view. *Accord, Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Officers do not possess a right to seize any object in their view in order to examine it to determine whether it might indicate criminal activity. Only if an officer has "good reason to believe" that an article is incriminatory evidence can it be seized and examined. *Alire v. People,* 157 Colo. 103, 402 P.2d 610 (1965).

I am not persuaded by the majority opinion that the officers had "good reason to believe" that the items in issue were incriminating evidence. Both the pliers and the pillowcases were innocuous and insufficient to permit the officers to make a plain view seizure. Even if pliers and pillowcases are sometimes used in the commission of a burglary; such items are not contraband, and their possession is consistent with legal behavior. A man of reasonable caution, who possesses knowledge that these items are sometimes used in illegal behavior, would not be justified in assuming, upon seeing the pliers or pillowcases, that criminal activity was afoot. *People v. Ware,* 174 Colo. 419, 484 P.2d 103 (1971); *accord, United States v. Berenguer,* 562 F.2d 206 (2d Cir. 1977); *State v. Cook,* 115 Ariz. 188, 564 P.2d 877 (1977).

Moreover, the police officers possessed no additional information which might have raised their suspicions to the level of reasonable belief.

At the time the officers seized the articles, they had no information linking the items or appellee's automobile to any criminal activity. In fact, the particular burglary for which the appellee was charged was not even reported until several hours after his arrest.

For the above-stated reasons, I would affirm the trial court's suppression ruling.

MR. JUSTICE LEE has authorized me to say that he joins me in this dissent.