The PEOPLE of the State of Colorado, Plaintiff-Appellant,

v.

William Homer MEYER, Defendant-Appellee.

No. 80SA540.

Supreme Court of Colorado, En Banc.

May 11, 1981.

Terrance L. Farina, Dist. Atty., James R. Alvillar, Chief Deputy Dist. Atty., William H. Kain, III, Deputy Dist. Atty., Grand Junction, for plaintiff-appellant.

J. Gregory Walta, Colorado State Public Defender, Robert W. Witek, Deputy State Public Defender, Grand Junction, for defendant-appellee.

QUINN, Justice.

The People in this interlocutory appeal challenge the district court's order suppressing as evidence a pair of undershorts seized without a warrant from the interior of a 1963 Chevrolet pickup truck, and several strands of hair and a portion of a seat cover subsequently seized from the vehicle in the course of a search pursuant to warrant. The district court concluded that the failure to obtain a search warrant invalidated the initial seizure of the undershorts and this illegality tainted the subsequent search pursuant to warrant. We reverse the suppression order.

I.

The defendant, William Homer Meyer, was charged by direct information with sexual assault in the first degree, section 18–3–402, C.R.S.1973 (1978 Repl.Vol. 8). The alleged offense occurred on September 3, 1980, near the town of Gateway, Colorado, in the defendant's 1963 Chevrolet pickup truck. The defendant and the victim lived in the town of Naturita and had known each other for about a month prior to the incident. As a favor to the victim the defendant agreed to drive her from Naturita to Grand Junction. According to the victim the sexual assault occurred on the return trip from Grand Junction in the early hours of the morning.

Upon her arrival at Naturita on September 3, she contacted the town marshal, Robin Olszynski, at about 4:15 a. m. and reported that she had been raped by the defendant about one and one-half hours previously. In describing the offense she stated that the defendant forcibly removed her jeans, a pair of red undershorts with blue trim that she had been wearing, and a sanitary napkin which she had been using during menstruation. She told the marshal that the pair of undershorts might still be in the pickup truck.

The defendant, whom the marshal knew, lived in a mobile trailer a very short distance from the marshal's office. Acting on the information received from the victim, the marshal and his deputy proceeded to the defendant's trailer just prior to daylight, at about 6:30 or 7:00 in the morning. They parked their patrol vehicle and while walking to the defendant's trailer they observed his pickup truck parked in a driveway adjoining the trailer. With the use of his flashlight the marshal looked through the

windshield and passenger window of the vehicle and observed the red undershorts lying on the floorboard. He opened the door and seized the undershorts which appeared to be blood-stained.

At the suppression hearing the marshal testified that he made no effort to obtain a search warrant for the undershorts. The nearest county judge was approximately twenty miles away in Norwood and the marshal was not certain of the defendant's whereabouts. After seizing the undershorts the officers knocked on the door to the mobile trailer and the defendant admitted them. The marshal advised the defendant of his *Miranda* rights[1] and, upon observing blood on the defendant's shirt and pants, took him into custody.

The pickup truck was towed to a garage for safekeeping. On September 10, 1980, a Mesa County Deputy Sheriff filed an affidavit for a search warrant, in which he described in detail his interview with the victim. A warrant was issued to search the vehicle for human hair, clothing, blood stains and other evidence. The officer executing the warrant removed several hairs from the floor of the vehicle and cut out a portion of the seat cover which appeared to be stained with blood.

In ruling on the suppression motion the court concluded that "there were no exigent circumstances of a compelling nature to justify" the initial search of the vehicle and the seizure of the shorts and "the subsequent seizure [of the hairs and portion of the seat cover] pursuant to ... warrant was tainted by the prior invalidity at the time of the seizure of the pants." We conclude that the court erred in its ruling. The initial warrantless seizure of the undershorts did not violate the prohibition against unlawful searches and seizures, *U.S. Const.* Amend. IV; *Colo.Const.* Art. II, Sec. 7, and, therefore, the derivative evidence rule was not applicable to the subsequent search of the vehicle and the seizure of evidence pursuant to warrant.

## II.

"[I]t is axiomatic that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions.'" *Colorado v. Bannister*, —— U.S. ——, ——, 101 S.Ct. 42, 43, 66 L.Ed.2d 142 (1980), quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585 (1967). In *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), the Supreme Court recognized a significant distinction, for purposes of the warrant requirement, between the search of stationary premises and mobile carriers:

"[T]he guaranty of freedom from unreasonable searches and seizures by the Fourth Amendment has been construed, practically since the beginning of the Government, as recognizing a necessary difference between the search of a store, dwelling house or other structure in respect of which a proper official warrant readily may be obtained, and a search of a ship, motor boat, wagon or automobile, for contraband goods, where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought." *Id.* at 153, 45 S.Ct. at 285, 69 L.Ed. at 551.

The *Carroll* doctrine has remained virtually unchanged to this day and is now known as "the automobile exception." *E. g., Colorado v. Bannister, supra; Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979); *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Preston v. United States*, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964); *see C. Whitebread, Criminal Procedure* § 7.02 at 142 (1980).[2]

■ The right to search a motor vehicle may exist independently of the right to

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. In addition to the factor of mobility, which is the primary rationale for "the automobile ex-

ception" to the warrant requirement, the United States Supreme Court also has emphasized the individual's diminished expectation of privacy in a motor vehicle as a basis for the exception. *See, e. g., Arkansas v. Sanders*, 442

arrest a driver or occupant. *E. g., Carroll v. United States, supra*. Where, as in the present case, a vehicle is unoccupied, the right to search hinges on a reasonable belief that it contains seizable objects—contraband, the fruits or instrumentalities of a crime, or evidence of a crime. *See, e. g., Colorado v. Bannister, supra; Chambers v. Maroney, supra; Preston v. United States, supra; Carroll v. United States, supra; see also Warden v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). Under the *Carroll* doctrine the police may conduct a warrantless search of a motor vehicle if: (1) there is probable cause to believe that it contains evidence of a crime; and (2) the circumstances create a practical risk of the vehicle's unavailability if the search is postponed until a warrant is obtained.

■ In this case the marshal had probable cause to search the pickup truck. The victim of the sexual assault had informed him just prior to the search that her undershorts might still be inside the vehicle. The vehicle was parked in a driveway, in an open and unfenced area adjacent to the defendant's mobile trailer, and was discovered by the marshal and his deputy as they were walking to the trailer to contact the defendant. Under such circumstances there was probable cause to believe that the vehicle contained evidence of the crime. *See, e. g., Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); *Carroll v. United States, supra*. Indeed, the trial court granted the motion to suppress not on the basis of a lack of probable cause

to search the vehicle, but rather due to the failure to obtain a search warrant.[3] The critical inquiry, therefore, is whether there were exigent circumstances to justify dispensing with the warrant requirement.

The marshal came upon the defendant's vehicle unexpectedly in the course of his short trip to the defendant's home to investigate a sexual assault. The evidence was undisputed that in the town of Naturita at that early hour of the morning there was no judge available for the issuance of a search warrant, the nearest judge being 20 miles away. The pickup truck was operational and was readily accessible to the defendant who was still at large and whose presence in the mobile trailer had not yet been confirmed. Under these circumstances it was proper for the officer to search the vehicle *for evidence of the crime rather than to postpone the search in order to obtain a warrant*. Such delaying action would have risked the disappearance of the vehicle and the loss of evidence therein. The facts immediately preceding the search of the vehicle bring this case squarely within "the automobile exception" to the warrant requirement. *See, e. g., Chambers v. Maroney, supra; Carroll v. United States, supra; Husty v. United States*, 282 U.S. 694, 51 S.Ct. 240, 75 L.Ed. 629 (1931); *People v. Smith*, Colo., 620 P.2d 232 (1980); *People v. Hutton*, 190 Colo. 382, 547 P.2d 237 (1976); *People v. Mathis*, 189 Colo. 534, 542 P.2d 1296 (1975); *People v. Fratus*, 187 Colo. 52, 528 P.2d 392 (1974); *People v. Chavez*, 175 Colo. 25, 485 P.2d 708 (1971). Therefore,

U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979); *Cardwell v. Lewis*, 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974).

3. In its oral ruling from the bench on the defendant's motion to suppress statements, which the court denied and is not before us, the court concluded that the marshal had probable cause to arrest the defendant and "[t]here was no opportunity to get a warrant at this time...." However, in connection with the initial search of the pickup truck the court stated:

" ... [T]he fact that the officers were *unlawfully on the premises* did not entitle them to go over and look around in the automobile. They were on the premises for the purpose of

arresting or interviewing Mr. Meyer. That does not give them a license to prowl about the premises and see what they can find by looking in the windows with a flashlight." (Emphasis added.)

It would appear from its context that "unlawfully" was intended as "lawfully". In the written findings of fact issued several weeks after the oral ruling on the motion the court made no mention of the officers being "unlawfully" on the premises. The victim's detailed description of the offense and of its perpetration inside the vehicle was the source of both the probable cause to arrest the defendant and the probable cause to search the vehicle.

the trial court erred in suppressing the undershorts seized inside the pickup truck.[4]

### III.

■ The court's suppression of the hairs and a portion of the seat cover taken from the vehicle in the course of the September 10 search pursuant to warrant similarly was flawed. The suppression of these items of evidence was premised on the faulty determination that the initial seizure of the undershorts was invalid. However, since there was no illegality involved in the first seizure, there was no "poisonous fruit" requiring the application of the derivative evidence rule. *See Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). A search warrant having been issued based on a probable cause affidavit for the search of the defendant's pickup truck, and the hairs and a portion of the seat cover having been lawfully seized pursuant to that warrant, the court erred in suppressing these items as well.

The order of suppression is reversed and the cause is remanded to the district court for further proceedings.

---

4. Because we resolve this case on the issues addressed by the trial court in its ruling—probable cause and the warrant requirement—it is unnecessary for us to consider whether the undershorts could have been seized under the plain view doctrine, independently of probable cause. *See People v. Haggart*, 188 Colo. 164, 533 P.2d 488 (1975); *People v. Shriver*, 186 Colo. 405, 528 P.2d 242 (1974); *People v. Ramey*, 174 Colo. 250, 483 P.2d 374 (1971).