**The PEOPLE of the State of Colorado, Plaintiff-Appellee,**

v.

**W.C. WILSON, Defendant-Appellant.**

**No. 83CA1080.**

Colorado Court of Appeals,
Div. III.

May 23, 1985.

Rehearing Denied July 18, 1985.

Certiorari Granted Nov. 4, 1985.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Eric Perryman, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, Peggy O'Leary, Michael J. Heher, Deputy State Public Defenders, Denver, for defendant-appellant.

VAN CISE, Judge.

Defendant, W.C. Wilson, appeals the judgment entered, after trial to the court, convicting him of driving after judgment prohibited in violation of § 42–2–206(1), C.R.S. (1984 Repl.Vol. 17). We affirm.

During 1978 and 1979, defendant was three times convicted of speeding. These convictions were obtained either by penalty assessment procedures, whereby defendant would mail in the ticket and fine, or by his signing a waiver form mailed by the traffic court. In at least two of his speeding convictions, defendant was not informed of his rights in accordance with Crim.P. 5(a)(2) and Crim.P. 11(b), and he was not represented by counsel on any of the three.

In 1979, based on the three speeding convictions, the Department of Revenue suspended defendant's driving privileges. He had advice of counsel before the suspension hearing, but decided to attend without an attorney. He did not appeal the Department's order of suspension.

While his driving privileges were under suspension, defendant was three times arrested and convicted of driving under suspension (DUS). *See* § 42–2–202(2), C.R.S. (1984 Repl.Vol. 17). He was assisted by counsel and was fully advised of his rights before each of his DUS convictions. These convictions were not appealed.

In 1981, the Department, after notice to defendant, conducted a hearing at which he was found to be an habitual traffic offender, *see* § 42–2–202(2)(a), C.R.S. (1984 Repl. Vol. 17), and his driving privileges were revoked for a period of five years. Defendant did not appeal this decision.

The present offense for which defendant was convicted occurred in 1982. Colorado State Patrol Officer Woods observed defendant driving a vehicle pulling a trailer with faulty brake lights and turn signals. Woods ran a routine license plate check on the vehicle and found it was registered to defendant. Another officer, Officer Walters, heard defendant's name on the radio and remembered having arrested him for DUS within the past two years. Walters went to where defendant had parked his vehicle and asked him for his driver's license. Woods arrived and identified defendant as the individual driving the vehicle with faulty lighting. It was then discovered that defendant's driving privileges had been suspended, and he was arrested.

I.

Defendant claims that the trial court erred in disallowing a collateral attack on the validity of the speeding convictions which led to the original suspension of his driving privileges. We disagree.

Defendant relies on *People v. Roybal*, 618 P.2d 1121 (Colo.1980), which held that a defendant charged with driving after judgment prohibited may collaterally attack the constitutional validity of traffic offense convictions which were the basis for the revocation of his license as an habitual offender. The court's decision in *Roybal* was based on the "principle that an unconstitutionally obtained conviction cannot be used in a later proceeding to support guilt or enhance punishment." Defendant claims that since he was not advised of his right to counsel when he pled guilty to the speeding offenses, the convictions are un-

constitutionally invalid and cannot form a foundation upon which to rest his conviction for driving after judgment prohibited.

■ The factual circumstances here, however, are distinguishable from those of *Roybal,* and a different result is warranted. In *Roybal,* defendant was collaterally attacking the traffic offense convictions which directly led to his status as an habitual traffic offender. Here, defendant is attacking the speeding convictions which led to the first order of suspension of his driving privileges, but he is not attacking the validity of the three DUS convictions which led to his habitual traffic offender status. Unlike in *Roybal,* here defendant had an opportunity at the time of each of his guilty pleas to DUS to contest the validity of his speeding convictions, but in none of those proceedings did he do so. Instead, he reaffirmed at each of his three DUS hearings that his driving privileges had been suspended because of convictions for traffic violations. Under these circumstances, we conclude the trial court did not err in disallowing defendant's collateral attack on his prior traffic offense convictions. *See People v. Bernard,* 656 P.2d 695 (Colo. 1983).

## II.

Defendant next contends that certain incriminating statements which he made, and the seizure of his driver's license, should have been suppressed as products of an illegal stop and detention. We do not agree.

■ In order to subject a person to an investigatory stop, the following conditions must be met:

"1) There must be a specific and articulable basis of fact for suspecting that criminal activity has occurred, is taking place, or is about to take place;

"2) The purpose of this stop must be reasonable;

"3) The scope and character of the stop must be reasonably related to its purpose."

*People v. Thomas,* 660 P.2d 1272 (Colo. 1983).

■ Here, the state patrol officers had specific and articulable grounds to believe defendant was committing a traffic offense because of the faulty lighting on the trailer being pulled by defendant's vehicle. *See* § 42–2–123(5)(d), C.R.S. (1984 Repl.Vol. 17). Thus, the stop was not based on mere conjecture. *Cf. People v. McPherson,* 191 Colo. 81, 550 P.2d 311 (1976). Furthermore, in light of his testimony that he remembered having arrested defendant for DUS within the previous two years, Officer Walters had a reasonable suspicion that defendant was driving while his driving privileges were under suspension.

■ Similarly, based on the officer's reasonable suspicion that defendant had committed a traffic offense and was driving while his driving privileges were under suspension, the officer had a valid purpose for asking for defendant's driver's license. And, this did not amount to an unreasonable search. *See People v. Tate,* 657 P.2d 955 (Colo.1983). Defendant's driver's license was not illegally seized and any statement he made to police officers was not the result of an illegal stop or detention.

## III.

■ Defendant finally contends that his constitutional rights were violated when the trial court allowed admission of certain inculpatory statements made by defendant to the officer before being given a *Miranda* advisement. We hold that error, if any, was harmless.

During the time defendant was being detained by Officer Walters, defendant stated that he did not drive very often and that he thought, "It would be all right." Over defendant's objection, the trial court allowed the statement into evidence.

The trial court's finding that defendant made the statement voluntarily and not as a result of questioning or other inducement by Officer Walters is not supported by evidence.

Defendant made the statement while conversing with Walters after he had been placed in custody. His testimony that he made the statement as a result of questioning by Walters was not contradicted; Walters' testimony was that he could not remember how defendant came to make the statement. Therefore, the prosecution failed to sustain its burden of proving that defendant made the statement voluntarily or that he waived his constitutional right to be silent. *See People v. Pierson,* 670 P.2d 770 (Colo.1983).

However, in view of the overwhelming independent evidence of defendant's guilt, the admission of his statement into evidence was harmless error. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

Judgment affirmed.

TURSI and BABCOCK, JJ., concur.